## AMERICAN BONDING CO. OF BALTIMORE v. KELLY.

(Supreme Court, Appellate Division, Second Department.   May 5, 1916.)

1. PRINCIPAL AND SURETY ⊕⇒57—SURETY COMPANIES—CONTRACTS—PAYMENT OF PREMIUMS—"ANNUAL PREMIUMS."

 A contractor's bond, requiring the contractor to pay therefor "in advance on the 19th day of July the annual premiums," requires the payment on that day of the premium yearly (citing Words and Phrases, Annual).

 [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 101; Dec. Dig. ⊕⇒57.]

2. PRINCIPAL AND SURETY ⊕⇒57—PREMIUMS—CONTRACTOR'S BOND—BREACH OF CONTRACT BY OBLIGEE—EFFECT.

 Where a contractor's bond conditioned recovery by the obligee on his performance of a building contract requiring monthly payments to the contractor, and such payments, while not always promptly made, were accepted by the contractor, and no attempt was made to rescind the bond, the contractor is not relieved by such delay from liability to pay his bond premiums.

 [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 101; Dec. Dig. ⊕⇒57.]

3. PRINCIPAL AND SURETY ⊕⇒129(5)—DISCHARGE OF SURETY—DELAY IN PAYMENT TO PRINCIPAL.

 Under a contractor's bond, conditioning recovery by obligee on his performance of the building contract, a surety is not discharged by failure of the obligee always to pay the contractor monthly as contracted, where there is no objection or attempt to cancel the bond.

 [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 370; Dec. Dig. ⊕⇒129(5).]

4. PRINCIPAL AND SURETY ⊕⇒105(1), 108(1)—DISCHARGE OF SURETY—EXTENSION OF TIME.

 To relieve a surety, an extension of time must rest upon a valid consideration, and must preclude the creditor from enforcing the debt during the period of extension.

 [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 196, 201, 203–210, 213 ; Dec. Dig. ⊕⇒105(1), 108(1).]

5. PRINCIPAL AND SURETY ⊕⇒100(1)—DISCHARGE OF SURETY—CHANGE OF CONTRACT.

 Where there is a change in the contract for the performance of which a bond is given, the surety is discharged, whether or not the alteration works mischief to him.

 [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 162; Dec. Dig. ⊕⇒100(1).]

Appeal from Trial Term, Westchester County.

Action by the American Bonding Company of Baltimore against George T. Kelly.   From a judgment for plaintiff, and an order denying new trial, defendant appeals.   Affirmed.

Argued before JENKS, P. J., and CARR, STAPLETON, MILLS, and PUTNAM, JJ.

George W. Elkins, of New York City, for appellant.
James A. Hughes, of New York City, for respondent.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

JENKS, P. J.  The plaintiff furnished a surety bond for the defendant's performance of his building contract with the Elks' Club. He paid in advance a year's premium for the period intervening July 19, 1911, and July 19, 1912.  The plaintiff sues for the premiums which accrued on July 19, 1912, and July 19, 1913, respectively.  The defendant pleaded that he agreed to pay the amount of the first year's premium, but none other; that such amount was paid, and also that the club, prior to July 19, 1912, had failed to make payments as provided for in the contract, and thereby the contract had been broken by the said club, and not by this defendant; that thereupon, and on or before July 19, 1912, the defendant had notified the plaintiff that said contract had been broken and that he would not require the bond, which should be canceled; and that the plaintiff had agreed to cancel it.  But there was no proof that the plaintiff had been notified that the contract had been broken, or that the defendant would not require the bond, which should be canceled, or that the plaintiff had agreed to cancel it.

The plaintiff read in evidence the building contract, the defendant's application to plaintiff for the bond, the bond, and called as a witness one of the committee of the said club in charge of the building of the house.  It proved by him that the last payment upon the building contract was made on March 15, 1915, and that the final certificate of the architect, as referred to in the contract, was issued on about that day.  The plaintiff also proved by this witness that the defendant completed the contract prior to and within two weeks of March 15, 1915.  On cross-examination the witness testified that defendant commenced the work under the building contract on July 19, 1911; that the first payment was made to him on September 23, 1911; that the payments were supposed to be made monthly on the architect's certificate passed by the committee, but that defendant had received no payments in October or in November, 1911, although a payment was tendered in the said October, but not taken until the following December; that no architect's certificate was issued in November, 1911; that defendant did not receive any payment in July, 1912, but that there was a payment in August, 1912, and that there was some delay as to the final payments.  On redirect examination the witness testified that he still had the custody of the bond, and that the defendant had never asked for it for the purposes of cancellation.  The defendant conceded that no part of the amount sued for had been paid. Thereupon the parties rested, and each, without other motion, moved for a direction of the verdict.  The court directed a verdict for the plaintiff.

[1] The defendant upon appeal contends that the contract for suretyship does not permit the construction made by the plaintiff, and that there is no evidence to be found in that contract or in the record that the defendant agreed to pay more than the sum paid, namely, of the premium for the year intervening July 19, 1911, and July 19, 1912. The contract under which the bond was issued provided that the defendant should "pay in advance on the 19th day of July the annual premiums or fees herein agreed upon, namely, $346.44, and to indemnify the surety on said bond, its successors and assigns, against all

loss, costs, damages, charge, liabilities, demands, and expenses whatever, including attorney's fees (resulting from any act, default, or neglect of mine or from any accident), that said surety may sustain or incur or that may be asserted or claimed against said surety by reason of its having executed said bond or any continuation or renewal thereof." And the argument of the defendant is:

"Had the word 'annual' been omitted, this contract would have been clear—and this bond would have cost Mr. Kelly [the defendant] the $346.44 which it is conceded has been paid;" and "granting to 'annual' its ultimate meaning, it is hardly elastic enough to mean 'each year during the period when said bond should be in force,' as alleged in the complaint, or 'each year until the final certificate of the architect should be issued.'"

The contract for suretyship requires payment in advance on the 19th of July (*without year*) of the annual premium. The word "annual" may naturally mean a yearly payment. Kearney v. Cruikshank, 117 N. Y. at 99, 22 N. E. 580; 1 Words and Phrases Judicially Defined, p. 400; State ex rel. Curtis v. McCullough, 3 Nev. 202–224. Therefore the contract may be read as requiring the payment on the 19th day of July of the premium in advance yearly. The bond was for the faithful performance of the contract. In the defendant's application of July 19, 1911, to the plaintiff for the bond, he stated that the work was to begin at once, to be completed "about one year from date," and that the bond would continue in force after the construction was completed for 30 days in order to receive final payment. The bond provided as follows:

"Now, therefore, the condition of this obligation is such that, if the said principal shall faithfully perform said contract on his part, according to the terms, covenants, and conditions thereof (except as hereinafter provided), then this obligation shall be null and void; otherwise, to remain in full force and effect."

The building contract provided that:

"No certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part."

And such contract was referred to in the bond. The proof was that the building contract, begun in 1911, was not completed until March, 1915.

[2-5] The bond provided:

"Notwithstanding that said contract is hereby referred to, this bond is nevertheless issued subject to the following express conditions, which shall be conditions precedent to the right of the owner to recover hereunder. The owner shall keep, do, and perform each and every, all and singular, the matters and things set forth and specified in said contract, to be by the owner kept, done, and performed exclusively at the times and in the manner as in said contract specified."

The defendant points to a provision in the contract that on the 1st day of each month the contractor should submit to the architect a statement of labor and materials furnished, and that by the 15th of said month the owners should pay to the contractor the amount payable as certified by the architect, less 10 per cent., and insists that, as the evidence shows that this defendant was not paid monthly,.

the club had failed to perform, and by its breach of such condition precedent it had released the surety from further liability upon the bond. So far as the facts in this case are concerned, the contention of the defendant must be that he was relieved from liability for the premiums simply because the club did not always make the payments to the contractor at the times prescribed in the building contract; for in this case there is no feature of a breach of the building contract followed by rescission thereof, or of any attempt of the surety to relieve itself of its obligation or even of any request for the cancellation thereof. On the contrary, the bond remained extant, retained and relied upon by the club, and apparently regarded as in full force and effect by the surety, the principal, and the said obligee. The comment of Pound, J., at trial term in F. & D. Co. v. Commonwealth Trust Co., 65 Misc. Rep. 88, 119 N. Y. Supp. 598, is pertinent in this case:

"Passing that question, I am of the opinion that it does not lie in the mouth of the principal in this case to set up as a defense to an action for premiums on the bonds a defense of the surety to a possible action brought against it by the city on the bonds, which defense might not be interposed and might not be successful if interposed."

But assume that the obligee had brought an action upon the bond. So far as the facts are apparent, the surety could but show that in a few instances its principal was not paid installments when due by the terms of the bond and there was some delay in the final payment. It would appear, however, that the payments were made shortly after the appointed times, and that there had been no objection made to these short delays, much less any attempt to cancel the bond. It would not be apparent how such delays could have prejudiced the surety, and it would appear that this defer of a few payments was not in an attempt to vary the building contract, but a mere indulgence like unto that held insufficient to affect the bond in Wilson v. Whitmore, 92 Hun, at 472, 36 N. Y. Supp. 550, affirmed on opinion below, 157 N. Y. 693, 51 N. E. 1094. See, too, Grier v. Flitcraft, 57 N. J. Eq. 556, 41 Atl. 425; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; Pingrey on Suretyship and Guaranty (2d Ed. Joyce) § 112e, and cases cited.

Moreover, to relieve the surety, the extension of time of payment must rest upon a valid consideration and must preclude the creditor from enforcing the debt during the period of extension. Schwartz v. Smith, 143 App. Div. at 300, 128 N. Y. Supp. 1, affirmed on opinion below, 207 N. Y. 714, 101 N. E. 1121; Pingrey, supra, § 114. When the contract itself is changed it is not necessary to inquire whether the alteration works mischief to the surety (Paine v. Jones, 76 N. Y. 274); but, as I have said, this defer of payments, upon the facts in this case, must be regarded merely as an indulgence. In St. John's College v. Ætna Indemnity Co., 201 N. Y. 342, 94 N. E. 996, it is said:

"The rule of strict construction is liable at times to work a practical injustice, and it ought not to be extended beyond the reason for the rule, particularly when the surety is engaged in the business of becoming surety for pay and presumably for profit. U. S. F. & G. Co. v. United States, 191 U. S. 416 [24 Sup. Ct. 142, 48 L. Ed. 242]."

The judgment and order are affirmed, with costs. All concur, except PUTNAM, J., not voting.