FIRST NATIONAL BANK OF EAST ISLIP, Respondent, *v.* NATIONAL SURETY COMPANY, Appellant.

Second Department, March 15, 1918.

Insurance — bond of surety company indemnifying bank against default of employee — provision fixing time limit for liability — construction — surety company subject to principles of Insurance Law — termination of liability — termination of risk — party in interest entitled to sue — when national bank not engaged in a savings business.

Although the Statute of Limitations in respect to relief for fraud does not begin to run until the fraud is discovered, there is no public policy preventing an insurer from fixing a time limit for its liability for secret breaches of trust, but the insurer should use clear and unmistakable terms in order to cut off liability for delayed claims.

Where a bond of a surety company indemnifying a bank against loss from dishonesty of an employee refers to the " termination of the bond," which is its expiration as to future liabilities, and the " termination of the surety's liability hereunder for any reason," the latter expression is not interchangeable with the former.

Such an insurer may not invoke the doctrine of *strictissimi juris.*

A surety company writing a bond indemnifying a bank against the default of employees is engaged in the business of insuring the fidelity of persons holding places of public or private trust, within the meaning of the Insurance Law, and is subject to the principles thereof, with the incidents of duration of risk, liability for return of premium, and in respect to the contract, to the rule of construction *contra proferentem.*

If the wording of such a contract of insurance prepared by the insurer's attorney is ambiguous and open to two constructions, the insurer cannot complain if held liable.

Provisions of a bond by a surety company indemnifying a bank against default by an employee examined, and *held,* not to be confined to misdoings committed and discovered while the bond is running and to include liability for loss from embezzlement not discovered for over two years.

A " liability " cannot be said to terminate until the insurer can no longer be held answerable for any matters under its contract.

The risk may be terminated at the expiration of the bonded period or by earlier methods of cancellation.

Where it appears that a stockholder without taking an actual assignment turned over property to the bank to make good the embezzlement in order to prevent its liquidation, the court might have found as a matter of law that the bank and not the stockholder was the real party in interest entitled to sue the surety company.

Evidence *held* not to warrant the conclusion that a national bank held itself out as a savings bank.

MILLS and THOMAS, JJ., dissented.

APPEAL by the defendant, National Surety Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Suffolk on the 21st day of May, 1917, upon the verdict of a jury.

The plaintiff, a national bank, brought this action upon a surety or fidelity bond, executed by defendant as surety for its employee, C. W. Monzet, the material parts of which instrument are as follows:

" The National Surety Company (Surety) in consideration of the premium of Twenty-five Dollars ($25.00), payable on the 5th day of February during each and every year that this bond shall continue in force, hereby agrees to make good within sixty (60) days after satisfactory proof thereof to

First National Bank of East Islip, Employer, any loss not exceeding Ten thousand Dollars ($10,000), which the Employer may sustain by reason of any act of Personal Dishonesty, Forgery, Theft, Larceny, Embezzlement, Wrongful Conversion or Abstraction, on the part of C. W. Monzet, Employee, in any position in the Employer's service, committed after the 5th day of February, 1912, and before the termination of this bond.

" Provided that the Employer shall not have had at the date hereof, any knowledge of the employee having been guilty of any act of Personal Dishonesty in any position in the Employer's service, or in the service of any other person, firm or corporation, and shall have notified the Surety (at Surety's expense), by telegraph and registered letter, giving all known particulars, addressed to its Home Office, No. 115 Broadway, New York City, within ten (10) days after becoming aware of any such act, or facts indicating such act, or any such loss, and shall have, within ninety (90) days after the discovery of any such loss, filed with the Surety an itemized statement of such loss, and produced for investigation all books, vouchers and evidence, in the Employer's possession, and rendered every assistance (except pecuniary) to aid in bringing the Employee to justice, which the Surety may have required, and the annual premium charged hereunder shall have been actually paid to the Surety or its duly authorized representative, within sixty (60) days after same shall have become due, and this bond shall have been duly executed by C. W. Monzet, Employee.

" The liability of the Surety hereunder shall immediately terminate as to subsequent acts of the Employee, (a) Upon discovery by the Employer of any default hereunder by the Employee; (b) The Employee leaving the services of the Employer; (c) Thirty (30) days after receipt by the Employer of written notice from the Surety of its desire to terminate same.

[Here is a clause providing for an arbitration of the amount of any loss.]

" Any claim against the Surety hereunder must be duly presented to the Surety within six (6) months after the date of the termination of the Surety's liability hereunder for any

reason, and no action or proceeding shall be brought hereunder unless begun within two (2) years after the Employer shall have given notice of such claim."

While Monzet was in the plaintiff's employ, he embezzled $11,690.04 from plaintiff's funds in its savings department. The amount so taken between May 28, 1912, and December 23, 1913, while this bond was in force, was $7,168.13. This defalcation was not discovered until about December 28, 1915, so that plaintiff did not present claim therefor to defendant until January 6, 1916. Frazier Gilman, a stockholder, to make good this impairment of the bank's assets, paid in to plaintiff this entire shortage. He had, however, realized, from property received from Monzet, $2,100.44.

After a charge, free from exception, the jury's verdict allowed this offset of $2,100.44, leaving $5,067.69 with $400 interest, total, $5,467.69. Only the defendant appealed. It urged: (1) That plaintiff's claim had not been seasonably presented under the terms of the bond; (2) that not plaintiff, but Frazier, was the real party to sue; (3) that the defalcation was committed while the bank was engaged in a savings business, which was *ultra vires.*

*Carlisle Norwood* [*William J. Griffin* with him on the brief], for the appellant.

*Oliver C. Carpenter* [*Charles H. Stoll* and *Charles P. Rogers* with him on the brief], for the respondent.

Putnam, J.:

Appellant's chief point is that the court should construe the appellant's bond so that its clause, the termination of the surety's liability hereunder for any reason, should mean the end of the bonded period, or the " termination of the bond." This is the more difficult because appellant has itself distinguished these expressions in this bond. In limiting the period of the risk of Monzet's acts of personal dishonesty or embezzlement, it states after the 5th day of February, 1912, and " before the termination of this bond."

Appellant's contract has no clause that limits its liability for present or past acts, even if not found out. There is such a right as to Monzet's subsequent acts, if Monzet should be

found in default, if he leaves the service, or in thirty days after the bank gets notice of the surety's " desire to terminate same." Apparently there would be a return premium if the surety gives this notice to terminate the bond, but if by discovery of default the bond terminates, the premium shall be deemed fully earned.

Although our Statute of Limitations, in respect to relief for fraud, does not begin to run till the fraud is discovered (Code Civ. Proc. § 382, subd. 5), there is no public policy that prevents an insurer from fixing a time limit for its liability for secret breaches of trust in a bank, which often long escape detection. Indeed, a clear and proper clause of that kind tends to require stricter scrutiny over the employee's accounts and transactions, and thus to benefit and promote diligence in the oversight of trusted subordinates. But the insurer should use clear and unmistakable terms to cut off liability for delayed claims. It might express this limit for claims as " within six months after the period of this bond," or, perhaps, " after this bonded period shall expire from any cause," or " within six months after the death, dismissal or retirement of said employe from the service of the employer, within the period of this bond, whichever of these events shall first happen " (*Ballard County Bank's Assignee* v. *U. S. Fidelity & Guar. Co.*, 150 Ky. 236); or to make good losses sustained " during the continuance of this bond, and discovered during said continuance, or within six months thereafter, and within six months from the death or dismissal or retirement of the employe from the service of the employer " (*California Savings Bank* v. *American Surety Co. of New York*, 82 Fed. Rep. 866); or to a loss sustained " and discovered during the continuance of the currency of this bond, and within six months from the employe ceasing to be in the said service." (*Guarantee Co.* v. *Mechanics' Savings Bank & Trust Co.*, 80 Fed. Rep. 766.)

But appellant's contract referred to two different events — the " termination of this bond," which was its expiration as to future liabilities (as afterward agreed on February 5, 1914) — and the " termination of the Surety's liability hereunder for any reason "— a vague expression not interchangeable with the former.

The appellant here is not the old time accommodating

individual surety, who may invoke the doctrine of *strictissimi juris.* (*American Bonding Co.* v. *Kelly,* 172 App. Div. 437; *St. John's College* v. *Ætna Indemnity Co.,* 201 N. Y. 342.) In writing this bond it engaged in the business of insuring the fidelity of persons holding places of public or private trust. (Insurance Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], § 70, subd. 4, as amd.) It is subject to the principles of insurance law with the incidents of duration of risk, liability for return of premium, and in respect to the contract (which it prepares and offers to its insured) to the salutary rule of construction *contra proferentem.* Appellant has engaged in a branch of insurance of great moment to banks and financial institutions. If the wording is open to two constructions, it cannot complain at our upholding its liability, since, as its attorney prepared the instrument which the court is invited to interpret, it could readily have avoided such ambiguous expressions. This is an axiom in insurance law. (*American Surety Co.* v. *Pauly, No. 1,* 170 U. S. 133, 144; *Preston* v. *Ætna Ins. Co.,* 193 N. Y. 142; *Royal Ins. Co.* v. *Martin,* 192 U. S. 149, 162; *Anderson* v. *Fitzgerald,* 4 H. L. Cas. [Clark's] 510.) In this contract a secret breach is within the terms of the bond, which is not confined to misdoings committed and discovered while the bond is running. In the attempt to cut off a liability that actually exists, clear words must be used. Here this limit runs beyond expiration of the bond period. It is strangely worded to say six months after the date of the termination of appellant's liability for any cause. Obviously there are set forth different modes of terminating liability, but all referring to liability *in futuro,* or to acts after this attempt to cut short the bond.

A " liability " cannot be said to terminate until the insurer can no longer be held answerable for any matters under its contract. The " risk " may be terminated at expiration of the bonded period, or by earlier methods of cancellation. We are not to frame for appellant a new or stricter contract than it has proffered, or to extend that avenue of deliverance which it has not well and distinctly marked.

The contention that plaintiff is not the real party in interest is on the ground that Mr. Gilman became assignee of this claim in suit, although there was no actual assignment made.

As a stockholder, he turned over property to make good the shortage, as otherwise the bank might be put into liquidation. It is evident that the understanding was that whatever should be realized by the bank in attempting to collect the defalcation even from the surety company should be credited to the stockholder so that his payment would in the end stand merely for the final deficiency. This appears from the letter, which the then president of the defendant bank wrote to the stockholder. The learned trial court submitted to the jury the question whether or not the bank still owned the claim. In so doing he gave to the defendant even more than it was in that regard entitled to, because that question might well have been decided in favor of plaintiff as matter of law.

The contention that the bank was engaged unlawfully in doing a savings bank business, so that defendant is not liable under the bond, was not in the amended answer, or raised at the trial. Moreover, the evidence does not appear to warrant the .conclusion that defendant held itself out as a savings bank. National banks in the country conduct what is called a savings department, and apparently without objection by the Federal officials supervising such institutions.

I advise, therefore, that the judgment appealed from be affirmed, with costs.

JENKS, P. J., and RICH, J., concurred; MILLS, J., dissented and voted to reverse the judgment and dismiss the complaint, upon the ground that the action, when commenced, was barred by the failure of plaintiff to present to the defendant the claim within six months after the expiration of the bond period, the provision of the bond in that respect being free from ambiguity and not susceptible of any other reasonable construction, with whom THOMAS, J., concurred.

Judgment affirmed, with costs.