## GUARANTY CO. v. PRESSED BRICK CO.[1]

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 39.   Argued October 30, 1903.—Decided December 7, 1903.

The taking by a materialman of thirty and sixty day notes for materials supplied to one contracting with the Government and who had given the bond of a surety company in pursuance of the act of August 13, 1894, 28 Stat. 278, to the effect, among other things that he would "promptly make payment to all persons supplying him labor or materials" will not necessarily relieve the surety company from obligation under the ordinary rule that exonerates a guarantor in case the time fixed for performance of the contract by the principal be extended without his consent, where it does not appear that such extension was unreasonable, or that the surety was prejudiced thereby.

THIS was an action originally begun in the Circuit Court for the District of Colorado by the United States, for the use and benefit of the Golden Pressed and Fire Brick Company, (hereinafter called the Brick Company,) against John A. McIntyre and the United States Fidelity and Guaranty Company, (hereinafter termed the Guaranty Company,) upon a bond executed April 11, 1898, in pursuance of an act of Congress of August 13, 1894, 28 Stat. 278, c. 280, to secure the performance of a contract theretofore entered into by McIntyre with the Secretary of the Treasury to furnish all the labor and materials and do all the work required for the foundation and superstructure of a mint in the city of Denver.

The questions certified are founded upon the following facts: McIntyre, having agreed to erect the building, executed a bond to the United States, with the Guaranty Company as surety, conditioned not only upon the faithful performance of his work to erect the building according to his contract, and to any changes or additions made thereto, but to "promptly make payment to all persons supplying him labor or material in

---

[1] Docket title, United States Fidelity and Guaranty Company v. United States, for the use and benefit, etc., of the Golden Pressed and Fire Brick Company.

the prosecution of the work contemplated by said contract."
During the progress of the work the Brick Company furnished
the contractor brick for the construction of the building to the
amount of $6517.55, which had been reduced by payments to
$2711.65, for which the action was brought.

The defendant denied its liability upon the ground that on
October 1, 1898, the Brick Company, without the knowledge
or consent of the Guaranty Company, granted to McIntyre an
extension of the time of payment of the balance then due on
account of the purchase price of such brick, and accepted two
promissory notes, one for thirty days after date, (October 1,)
and another sixty days after September 15, 1898, the first one
of which was paid. There was no allegation that, by reason
of the extension of the time of payment of the sum so due on
October 1, the Guaranty Company had sustained any loss or
injury, but it was insisted that it was nevertheless thereby
released and discharged from any further liability upon such
bond.

The Circuit Court held that the extension did not operate
to discharge the Guaranty Company from its liability, and the
Circuit Court of Appeals, to which the case was carried, cer-
tified to this court the following questions of law arising from
these facts:

"First. Did the action of the Brick Company on October 1,
1898, in taking two promissory notes, one for the sum of $1,275
and the other for the sum of $2,508.10, for the amount of the
Brick Company's account, then due and payable, one of said
notes running for thirty days and the other for sixty days, and
each bearing ten per cent interest per annum from date, operate
to discharge the United States Fidelity & Guaranty Company
from its liability, assumed under the provisions of the aforesaid
bond, to pay to the Golden Pressed & Fire Brick Company the
amount of said indebtedness?

"Second. Did the extension of the time of payment of the
balance due from said McIntyre, on October 1, 1898, by the
taking of two notes in the manner and form aforesaid, operate

to discharge the United States Fidelity & Guaranty Company of its liability to pay the amount of said indebtedness to the Brick Company, irrespective of the question whether said Guaranty Company did or did not sustain an actual loss or damage on account of such extension?"

*Mr. Andrew W. Gillette* for plaintiff in error.

The obligation of the plaintiff in error is that of suretyship, and in determining its liability to the Brick Company the rules of law applicable to contracts of suretyship in general are to be applied. *United States* v. *Am. Bonding and Trust Co.*, 32 C. C. A. 420; 89 Fed. Rep. 925, 929; *United States* v. *McIntyre*, 111 Fed. Rep. 590, 597. The terms and extent of this obligation are to be ascertained by reading the bond in the light of the contract between McIntyre and the Brick Company. The bond alone does not contain all the surety's contract with the Brick Company. *Brown* v. *Markland*, 22 Ind. App. 652; 53 N. E. Rep. 295, and cases cited; *Ulster County Savings Inst.* v. *Young*, 161 N. Y. 23; 55 N. E. Rep. 483.

The statutory bond in suit imposes upon the surety a dual obligation: (1) to the government, for the completion of the principal contract; (2) to laborers and materialmen, to see that they are promptly paid. These obligations are entirely separate and distinct. *United States &c.* v. *Nat. Surety Co.*, 34 C. C. A. 526; 92 Fed. Rep. 549; *United States &c.* v. *Rundle et al.*, 40 C. C. A. 450; 100 Fed. Rep. 400; *Griffith* v. *Rundle*, 23 Washington, 453; 63 Pac. Rep. 199; *Omaha Bldg. & Const. Co.* v. *United States F. & G. Co.*, 116 Fed. Rep. 145; *United States* v. *Freel*, 92 Fed. Rep. 299; affirmed 99 Fed. Rep. 237; *Dewey* v. *State*, 91 Indiana, 173; *Conn* v. *State*, 125 Indiana, 514; 25 N. E. Rep. 443; *Doll* v. *Crume*, 41 Nebraska, 655; 59 N. W. Rep. 806; *Kauffman* v. *Cooper*, 46 Nebraska, 644; 65 N. W. Rep. 796; *Lyman* v. *City of Lincoln*, 38 Nebraska, 794; 57 N. W. Rep. 531; *United States* v. *Stratford*, 65 N. Y. Supp. 1051; *Steffes* v. *Lemke*, 40 Minnesota, 27; 41 N. W. Rep. 302.

.Any change whatever in the contract for which the surety is liable, made without his consent, will operate his discharge. *United States* v. *Freel,* 92 Fed. Rep. 299, 306, affirmed 99 Fed. Rep. 237; *Reese* v. *United States,* 9 Wall. 13, 21; *Bethune* v. *Dozier,* 10 Georgia, 235.

Extension of time of payment, if made without his consent, is such a change as will release a surety. 2 Brandt on Suretyship and Guar. § 342; 1 Story's Eq. Jur. § 326; *New Hampshire Sav. Bank* v. *Colcord,* 15 N. H. 119; 41 Am. Dec. 685; *Winne* v. *Colo. Springs Co.,* 3 Colorado 155, 161; *Martin* v. *Thomas,* 24 How. 315; *Smith* v. *United States,* 2 Wall. 219.

If a creditor take the note of a debtor, payable at a future date, for a debt then due, he thereby extends the time of payment of, and suspends his right of action upon, the debt until the maturity of such note, and thereby releases from further obligation any person who was bound as surety for the payment of such debt. *United States* v. *Am. Bonding and Trust Co.,* 32 C. C. A. 420; 89 Fed. Rep. 925, 929; *Rees* v. *Berrington,* 2 Ves. Jun. 540; 2 White and Tudor's Lead. Cas. Eq. 1867, 1869. See American cases cited to the same proposition in note Ibid., 1915; *Chickasaw Co.* v. *Pitcher,* 36 Iowa, 593, 598; *Myers* v. *Wells,* 5 Hill (N. Y.), 463; *Appleton* v. *Parker,* 15 Gray (Mass.), 175; *Okie* v. *Spencer,* 2 Whart. (Pa.) 253, 257; *Hart* v. *Hudson,* 6 Duer, 305; *Norton* v. *Roberts,* 4 T. B. Monroe (Ky.), 491; *Fellows* v. *Prentiss,* 3 Den. 512, 518; 45 Am. Dec. 484, and cases cited in note; *Templeman* v. *Tex. Brewing Co.* (Tex. 1896), 35 S. W. Rep. 935; *Elyton Co.* v. *Hood,* 121 Alabama, 373; 25 So. Rep. 745; *Brooks* v. *Wright,* 13 Allen (Mass.), 72; *Benson* v. *Phipps,* 87 Texas, 578; 29 S. W. Rep. 1061; *Andrews* v. *Marrett,* 58 Maine, 539.

The implied agreement of the Brick Company for extension of time of payment of McIntyre's indebtedness was based upon a sufficient consideration. *Myers* v. *Wells,* 5 Hill (N. Y.), 463, 464; *St. Paul Trust Co.* v. *St. Paul Chamber of Com.,* 70 Minnesota, 486; 73 N. W. Rep. 408; *Benson* v. *Phipps,* 87 Texas, 578; 29 S. W. Rep. 1061, and cases cited; *Drescher* v. *Fulham,* 11 Colo. App. 62.

A surety is discharged by a change, made without his consent, in the contract for the performance of which he is bound, regardless of whether or not he is damnified by such change. *Miller* v. *Stewart*, 9 Wheat. 680, 702; Rose's Notes on U. S. Reports, 314; *Reese* v. *United States*, 9 Wall. 13, 21; *Bethune* v. *Dozier*, 10 Georgia, 235; *Burley* v. *Hitt*, 34 Mo. App. 272; *Norton* v. *Roberts*, 4 T. B. Monroe (Ky.), 491.

*Mr. T. J. O'Donnell* for defendant in error:

We contend that the obligation assumed by these so-called guaranty and surety companies, in cases of this kind, is that of insurers and that they should be and are being so treated by the courts, and that the law which governs those who for a premium paid assume a possible risk should be applied to them, rather than that they should be deemed "favorites of the law," a term used (somewhat unhappily perhaps) with respect to that social surety, who from motives of kindness and friendship, without interest in the profit and without consideration, voluntarily assume liability for the performance of contracts by, and possible faults of, neighbors and friends. See *United States &c.* v. *Rundle*, 107 Fed. Rep. 227; 46 C. C. A. 251; *United States &c.* v. *Kimpland*, 93 Fed. Rep. 403; *F. & G. Co.* v. *Omaha Bldg. & Const. Co.*, 116 Fed. Rep. 145; *Griffith* v. *Rundle*, 23 Washington, 453; *United States &c.* v. *Hazzard*, 53 N. Y. App. Div. 410; *Mullin* v. *United States &c.*, 109 Fed. Rep. 817; 48 C. C. A. 677; *United States* v. *Freel*, 92 Fed. Rep. 299; 39 C. C. A. 491; 99 Fed. Rep. 237; 186 U. S. 39; *Ludlow* v. *Simond*, 2 Caine's Cases, 1, 29; *Blest* v. *Brown*, 6 Law T. N. S. 620.

That parties furnishing labor and materials protected by an undertaking such as that given in the case at bar, are not affected by a change in the contract made by the principals, is held not only in the Federal cases which we have cited, but to the same effect is, *Doll* v. *Croom*, 41 Nebraska, 655; *Kauffman* v. *Cooper*, 46 Nebraska, 644; *Steffes* v. *Lemke*, 40 Minnesota, 27; *Cohn* v. *State*, 125 Indiana, 514; *Dewey* v. *State*, 91 Indiana, 173; *United States* v. *Stratford*, 65 N. Y. Supp. 1051, cited in the brief

of counsel for plaintiff in error, and see also *Brown* v. *Markland,* 22 Ind. App. 652.

It is not attempted to be set forth in the certificate that the notes were taken in payment of the debt, and it will not be so presumed. A certificate of this kind is the same as with respect to the pleadings, with which the rule is that the pleading must definitely aver that the plaintiff accepted the notes in settlement, satisfaction and discharge of the debt. *Homas* v. *McConnell,* 3 McLean, 381; *Blunt* v. *Williams,* 27 Arkansas, 374–376; *Taylor* v. *Purcell,* 60 Arkansas, 606, 611; *Hughes* v. *Wheeler,* 8 Cow. 77–81; *Loux* v. *Fox,* 171 Pa. St. 68–71; *McGwire* v. *Bidwell,* 64 Texas, 43.

And, besides, in a case where a creditor has a lien or security, the taking of a note does not constitute a payment. *Mehan* v. *Thompson,* 71 Maine, 492; *Cotton* v. *Atlas Nat. Bank,* 145 Massachusetts, 43; *Bunker* v. *Barrow,* 79 Maine, 62; *Machine Co.* v. *Brock,* 113 Massachusetts, 194.

Under mechanics' lien laws the giving of credit, taking of notes or other security, does not waive or release the lien. *Mehan* v. *Thompson,* 71 Maine, 492; *Western Brass Mfg. Co.* v. *Boyce,* 74 Mo. App. 343; *Mt. Electric Co.* v. *Miles,* 56 Pac. Rep. 284; 9 N. M. 512; *Cuchwa* v. *Improvement L. & B. Assn.,* 32 S. E. Rep. 259–263.

This act gave by the bond a substitute for security given by the lien law on private buildings. Surety companies are to be treated as insurers, and contracts of this kind construed and governed by the law applicable to insurance policies rather than the strict rule of law in relation to suretyship. See Frost on Guaranty Insurance Companies citing under § 3; *People ex rel.* v. *Rose,* 174 Illinois, 310; *Guaranty Co.* v. *Mechanics' Savings &c.,* 80 Fed. Rep. 766; 26 C. C. A. 146; *Am. Credit Indemnity Co.* v. *Athens Woolen Mills,* 92 Fed. Rep. 581; 34 C. C. A. 161; *Bank* v. *Fidelity & Dep. Co.,* 128 N. Car. 366; *Jackson* v. *Fidelity & Cas. Co.,* 75 Fed. Rep. 359; 21 C. C. A. 394; *Shackman* v. *U. S. Credit System Co.,* 92 Wisconsin, 366; *Tebbets* v. *Mercantile Credit Guar. Co.,* 73 Fed. Rep. 95; 19 C. C. A. 281;

*People ex rel.* v. *Fidelity & Cas. Co.*, 153 Illinois, 25; *Eickoff* v. *Fidelity & Cas. Co.*, 74 Minnesota, 139; *Fidelity & Cas. Co.* v. *Yoder*, 64 Pac. Rep. 1027; 63 Kansas, 880; *Seaton* v. *Heath*, 1 L. R. Q. B. D. 1899, 782; *Dane* v. *Mtg. Ins. Corp.*, 1 L. R. Q. B. D. 1894, 54; *Finley* v. *Mex. Ins. Corp.*, 1 L. R. Q. B. D. 1897, 517; *Fidelity & Cas. Co.* v. *Crays*, 76 Minnesota, 450; *Fidelity & Cas. Co. of N. Y.* v. *Eickoff*, 63 Minnesota, 170; *State* v. *Hogan*, 8 N. D. 301; *Robertson* v. *U. S. Credit System Co.*, 57 N. J. L. 12; *Claflin* v. *U. S. Credit System Co.*, 165 Massachusetts, 501; *Hayne* v. *Metropolitan Tr. Co.*, 67 Minnesota, 245; *Strouse* v. *American Credit Ins. Co.*, 91 Maryland, 244; *Trenton Potteries Co.* v. *Title Guar. & T. Co.*, 64 N. Y. Supp. 116; 50 N. Y. App. Div. 490; *Minnesota Title Ins. & T. Co.* v. *Drexel*, 70 Fed. Rep. 194; 17 C. C. A. 56; *Wheeler* v. *Real Estate Title Ins. & T. Co.*, 160 Pa. St. 408.

And see Frost on Guar. Ins. Cos. § 4, citing *Walker* v. *Holtzauer*, 57 So. Car. 459; 35 S. E. Rep. 754; *Com.* v. *Equitable Ben. Assn.*, 137 Pa. St. 412; *Am. Surety Co.* v. *Pauly*, 170 U. S. 133.

The parties to a contract which has been executed by another party as surety may still deal with each other in matters outside of the contract of the surety with the same effect as if no such contract or suretyship existed, and such dealings do not release the surety. *Benjamin* v. *Hillard*, 23 How. 149; *Roach* v. *Summers*, 20 Wall. 165; *Cross* v. *Allen*, 141 U. S. 528, and cases cited; *Stuts* v. *Strayer*, 60 Ohio St. 384; *Joyce* v. *Auten*, 179 U. S. 591, and cases cited; *Fertig* v. *Bartles*, 78 Fed. Rep. 866; *Wood* v. *Brown*, 104 Fed. Rep. 203; 43 C. C. A. 474; *Mullin* v. *United States*, 109 Fed. Rep. 817.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This bond was given in pursuance of the act of 1894, 28 Stat. 278, c. 280, "for the protection of persons furnishing materials and labor for the construction of public works." The act

requires, in substance, that persons contracting with the United States for the construction of any public building, etc., shall be required, before commencing such work, to execute the usual penal bond, "with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract," with a right on the part of the materialman to bring suit in the name of the United States for his use and benefit against the contractor and his sureties. The bond in this case contained two entirely distinct and separate obligations: First, that McIntyre should fulfill all the conditions and covenants of his contract, whatever changes in or additions to such contract might thereafter be made; and, second, promptly make payment to all persons supplying him labor and materials in the prosecution of the work. Of course, these covenants are to be read together and the latter interpreted in the light of the former.

The question involved is whether the ordinary rule that exonerates the guarantor, in case the time fixed for the performance of the contract by the principal be extended, applies to a bond of this kind executed by a Guaranty Company, not only for a faithful performance of the original contract, but for the payment of the debts of the principal obligor to third parties. It is conceded that, by the general law of suretyship, any change whatever in the contract for the performance of which the guarantor is liable, made without his consent, such, for instance, as an extension of time for payment, if made upon sufficient consideration, discharges the guarantor from liability. *Miller* v. *Stewart*, 9 Wheat. 680; *Smith* v. *United States*, 2 Wall. 219; *Reese* v. *United States*, 9 Wall. 13.

Counsel for the Brick Company argued with much persuasiveness that this rule of *strictissimi juris*, though universally accepted as applicable to the undertaking of an ordinary guarantor, who is usually moved to lend his signature by motives of friendship or expectation of reciprocity, and without pecun-

iary consideration, has no application to the Guaranty Companies, recently created, which undertake, upon the payment of a stipulated compensation and as a strictly business enterprise, to indemnify or insure the obligee in the bond against any failure of the obligor to perform his contract. It is, at least, open to doubt, however, whether any relaxation of the rule should be permitted as between the obligee and the guarantor, which may have signed the guaranty in reliance upon the rule of *strictissimi juris,* and with the understanding that it is entitled to the ordinary protection accorded to guarantors against changes in the contract or extensions of the time of payment. The government wisely protects itself in these cases by providing in the bond that the obligation of the surety shall extend to all changes in or additions to the contract, which may thereafter be made—a clause which we have held extends to such changes as might be found advantageous or necessary in the plans or specifications, but does not extend to a change in the location of the structure to be built. *United States* v. *Freel,* 186 U. S. 309. But no provision was made in the bond in that case with respect to the obligation of the principal and his surety to make payment to all persons supplying labor or material to the contractor in the prosecution of his work.

We do not, however, deem it necessary to express an opinion upon this subject, as we prefer to rest our decision upon the perculiar character of the covenant upon which this action is brought. In an ordinary guaranty the guarantor understands perfectly the nature and extent of his obligation. If he becomes surety for the performance of a building contract, he is presumed to know the parties, the terms of their undertaking, the extent and feasibility of the work to be done, the character and responsibility of the principal obligor, and his ability to carry out the contract. If he guarantees the payment of a particular debt, he usually knows the exact amount of the debt, the time when it matures, and something of the ability of the principal to meet it. If he becomes responsible for the payment of the principal's debts generally, or lends his credit

to a proposed purchaser of goods, he knows the amount of his liability and the means of his principal to meet them. In such cases he contracts in reliance upon the exact terms of his principal's undertaking, and has a right to suppose that no change will be made without his consent; and the courts have gone so far as to hold that any change will exonerate him, though it really redound to his benefit.

This covenant, however, is inserted for an entirely different purpose from that of securing to the government the performance of the contract for the construction of the building. Inasmuch as neither the contractor nor his sub-contractors can secure themselves by a mechanic's lien upon the proposed building, the government, solely for the protection of the latter, requires a covenant for the prompt payment of their claims, and the same security that it requires for the performance of the principal contract. In this covenant the surety guarantees nothing to the principal obligee—the government—though the latter permits an action upon the bond for the benefit of the sub-contractors. The covenant is made solely for their benefit. The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of sixty days, or whether, after the materials are furnished, the time for payment is extended sixty days, and a note given for the amount maturing at that time. If a person deliberately contracts for an uncertain liability he ought not to complain when that uncertainty becomes certain.

Stress is laid upon the fact that the defendant company guaranteed that the principal obligor should "promptly" make payment to his materialmen, and that this, properly inter-

preted, required that the contractor should pay at once upon the maturity of the bills, and that as such bills became due October 1, 1898, the promptness guaranteed required their immediate payment. We are not impressed with the force of this contention. If the word "promptly" has any particular significance in this connection, it is satisfied by such payment as the sub-contractor shall accept as having been promptly made; or perhaps it was intended to give him an immediate action upon the bond, in case such payment be not made with sufficient promptness. It was not intended, however, that the want of an immediate payment should be set up as a defence by the surety. As these bills are rarely paid the very day they become due, the narrow construction claimed would destroy the principal value of the security.

The facts of this case do not call for an expression of opinion as to whether, if an unusual credit were given, and in the meantime the principal obligor had become insolvent, or the surety were otherwise damnified by the delay, it might not be exonerated; since neither of these contingencies supervened in this case, we are remitted to the naked proposition whether the giving of a customary credit, with no evidence of loss thereby occasioned, is sufficient to discharge the surety. We find no difficulty whatever in answering this question in the negative. The rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation, which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of the sub-contractor, with a view of furthering the beneficent object of the statute. Of course, this rule would not extend to cases of fraud or unfair dealing on the part of a sub-contractor, as was the case in *United States v. American Bonding & Trust Co.;* 89 Fed. Rep. 921, 925, or to cases not otherwise within the scope of the undertaking.

Bonds containing the covenant in question are not common, though they have sometimes appeared in the state courts, and the construction here given them has been generally adopted, *United States* v. *Hazzard*, 53 N. Y. App. Div. 410, although these cases have generally turned upon the question whether the rights of the materialmen were affected by a change made in the contract by the principals. *Dewey* v. *State*, 91 Indiana, 173; *Conn* v. *State*, 125 Indiana, 514; *Steffes* v. *Lemke*, 40 Minnesota, 27; *Doll* v. *Crume*, 41 Nebraska, 655; *Kaufmann* v. *Cooper*, 46 Nebraska, 644; *Griffith* v. *Rundle*, 23 Washington, 453.

Both of the questions certified are answered in the negative.