S. L. FULGHUM AND UNION INDEMNITY Co., *Plaintiffs in Error,* v. THE STATE OF FLORIDA FOR THE USE OF THE CITIZENS & PEOPLES NATIONAL BANK OF PENSACOLA, FLORIDA, *Defendant in Error.*

Division A.

Opinion Filed July 15, 1927.

*Robert H. Anderson* and *Wm. Fisher,* for Plaintiffs in Error;

*Watson & Pasco & Brown,* for Defendant in Error.

ELLIS, C. J.—This case is here on writ of error to a judgment in favor of the defendant in error, plaintiff below, against S. L. Fulghum and Union Indemnity Company.

S. L. Fulghum had entered into a contract with the State of Florida through the proper agency to construct or improve a certain road from Pensacola to Roberts, in Escambia County. Fulghum executed a bond, with the Union Indemnity Company as surety and the State of Florida as obligee, binding himself, among other things, to: "promptly pay all just claims for damages for injury to property and for labor and materials, incurred by said 'principal' in or about the construction or improvement contracted for."

In the case of Fulghum, *et al,* v. State, — Fla. —, 109 South. Rep. 644, this Court held that such condition met the requirements of the statute and afforded protection to persons supplying labor and materials in the prosecution of public works. See Section 3533 Revised General Statutes, 1920.

In the performance of his contract Fulghum became indebted for materials and labor. For materials he became indebted to Escambia Sand & Gravel Corporation in the sum of ten thousand four hundred and forty-three and 50/100 dollars; Roquemore Gravel Company in the sum of one thousand seven hundred and two and 40/100 dollars; Edward Campbell in the sum of two thousand and sixty-five and 75/100 dollars; W. R. Taylor and Company in the sum of twenty-five thousand five hundred and eighty and 65/100 dollars; and to Truscon Steel Company in the sum of five hundred and seventy dollars—making a total of forty thousand two-hundred and ninety and 30/100 dollars —and to numerous laborers in the sum of thirty-seven hundred and thirty-four and 38/100 dollars. These items of indebtedness ranged from fifty cents to forty dollars

in amount for labor performed from the week ending October 6, 1923, to the week ending November 23, 1923, which was Friday. There were some two hundred and ninety items on the bill of particulars on this account, many names appearing on each week's pay roll.

These accounts, as alleged, were all assigned to the bank before the commencement of the action, which was brought by the bank in the name of the State against the Surety Company and Fulghum for the recovery of the amount alleged to be due. The declaration does not allege that any one of the various creditors of Fulghum nor the bank made application to the Treasurer of the State or other public authority having charge of the work for a copy of the contract and bond, nor that any of them made affidavit that labor or materials for the prosecution of the work had been supplied by them and payment for which had not been made. The statute provides that upon complying with this requirement such persons shall be furnished with a certified copy of the contract and bond "upon which, said person, or persons, supplying such labor and materials, shall have a right of action, and shall be authorized to bring suit in the name of the State of Florida," for his or their use and benefit against the contractor and sureties. Section 3533, *supra*.

Fulghum and the Union Indemnity Company demurred to the declaration and the same was overruled.

After this order was made the plaintiff, by leave of the court, amended its declaration by adding five counts. These additional counts merely dealt severally with the claims of the material men and corporations for materials furnished, each claim forming the basis of one count.

The original declaration contained two counts. In the first the claims of the material men were grouped and in the second all the claims of persons for labor were grouped.

Prior to the amendment the defendant moved the court to require the plaintiff to amend the counts by making each claim the basis for a separate and distinct count. No action was taken on this motion and the defendants on April 7th interposed twenty-five pleas.

The plaintiff demurred to the twenty-third, twenty-fourth and twenty-fifth pleas, which demurrer was sustained. These pleas were originally pleaded as defense on "equitable grounds" and by leave of the court those words were stricken from the pleas.

The record then recites that on June 16th following, the defendant "filed pleas number 26, to 36 inclusive." They are all copied in full in the transcript.

The plaintiff again demurred to pleas numbered twenty-three, twenty-four and twenty-five as they stood after striking the words "on equitable grounds" from each. It also demurred to pleas numbered twenty-six, thirty-two, thirty-three and thirty-four. This demurrer was also sustained. Pleas numbered thirty-three and thirty-four were first filed as pleas on equitable grounds and after demurrer sustained the words "on equitable grounds" were by leave of the court stricken and they were again demurred to and the demurrer sustained.

Then, on September 3rd following, the defendant interposed pleas numbered thirty-seven to forty-two inclusive. These were pleas to the second count of the declaration. They were pleas of never indebted; never promised; payment; denial of assignment of claims to the bank; denial of ownership by the bank of the claims and denial that the claims were for labor performed by the plaintiff's assignor.

Then followed replications to all pleas except those numbered three, five, eight, twelve, sixteen, twenty, twenty-three, twenty-four, twenty-five, twenty-six, thirty-two,

thirty-three, thirty-four, and thirty-seven, thirty-eight, thirty-nine, forty, forty-one, and forty-two; the first series from three to twenty inclusive having been stricken on motion, the second series from twenty-three to thirty-four inclusive having gone out on demurrer and the third series from thirty-seven to forty-two, being pleas to the second count, not being replied to at all.

At the end of this logomachical sparring the parties went to trial on pleas numbered one, two, four, six, seven, nine, ten, eleven, thirteen, fourteen, fifteen, seventeen, eighteen, nineteen, twenty-one, twenty-two, twenty-seven, twenty-eight, twenty-nine, thirty, thirty-one, thirty-five, thirty-six, thirty-seven, thirty-eight, thirty-nine, forty, forty-one, forty-two to the second, third, fourth, fifth, sixth and seventh counts of the declaration; the first count having been withdrawn.

The issues thus presented by all the above numbered pleas being simply whether the debt was due; whether the claims or any part thereof, had been paid; and whether the bank owned them.

Upon completion of the testimony the "Court, on motion of the plaintiff, directed the jury to render their verdict in behalf of the plaintiff." A general verdict for the plaintiff was rendered in the sum of $36,051.48, "with intrest from date of suit." Judgment was thereupon entered for the total sum of $38,591.11, which included interest in the sum of $2,539.63.

The claims set forth in the first count, which by the amendment became the third, fourth, fifth, sixth and seventh counts, amounted to a total of $40,290.30 and that of the second count to the sum of $3,734.38, or a total sum of $44,024.68.

To this judgment the defendants took a writ of error.

The claims which formed the basis of the fourth, fifth

and seventh counts amounted respectively to $1,702.40, $2,065.75 and $570.00 according to the bill of particulars, while the total of claims forming the basis of the second count amounted to $3,734.38 or a greater sum than the amount of the claims forming the basis of either the fourth, fifth or seventh counts; and nearly equal to their total. But the amount of the verdict was determined by the court's directions to the jury, which were that certain items of the Edward Campbell account, fifth count, certain items of the pay roll accounts, second count, and certain items from the W. R. Taylor and Company accounts, sixth count were to be eliminated. Thereupon the attorneys for the respective parties under the court's ruling agreed that the verdict should be for the amount stated.

While there was no replication or similiter filed by the plaintiff to the pleas numbered from thirty-seven to forty-two inclusive it was not error to submit the cause as made by the second count to the jury. See Knight v. Empire Land Co., 55 Fla. 301, 45 South. Rep. 1025; Carlton-Moore Co. v. Vanderipe, 80 Fla. 512, 86 South. Rep. 346; Sec. 2812, Revised General Statutes, 1920.

There are sixty-four assignments of error.

Assignments numbered four, seven, thirteen and fifteen are based upon the order sustaining the demurrer to pleas numbered twenty-three and thirty-four before and after amendment. These pleas, almost identical in language, present the same defense to the third, fourth, fifth, sixth and seventh counts of the amended declaration.

The pleas are very lengthy, but they need not be set out in full. They present the question: Whether the Surety Company in this action is liable on the bond to the plaintiff who, being the creditor of the contractor upon obligations for which the Surety was not liable, received the payments made by the owner (The State Road

Department) to the contractor on the construction work and devoted such payments to other obligations of the contractor to the bank for which the surety was not liable, at the same time paying the bills for materials and taking assignments of such bills from the material men without giving notice to the surety of such proceeding.

In other words, the Surety Company was obligated to make prompt payments to all material men for materials furnished in the construction of the road to the contractor, under conditions prescribed by the statute, which were that affidavits submitted by the material men to the State Road Department should be made showing that materials had been furnished and payment therefor had not been made. That the bank, which was creditor of the obligor upon obligations for which the company was in no wise surety, received the payments upon the contract from the owner and, not permitting such payments to come into possession of and under control of the contractor but requiring the same to be subject to the control of the bank, applied such payments to the obligor's said indebtedness to the bank; advanced other sums in payment of the material men; took assignments of their accounts; charged the sums so advanced to the contractor; and thus kept the work on the road going on while it obtained other payments from the State Road Department, which were applied to debts of the contractor on other accounts, meanwhile not advising either surety or ''owner'' that the claims for material were not being paid by the contractor.

This proceeding, as the plea avers, occurring when the contractor was in failing financial circumstances, unable to continue operations if the claims for material and labor had not been promptly paid, all of which was known to the bank which held a mortgage upon the contractor's machinery, tools and road equipment to secure debts due by

him to the bank on other transactions, as well as for sums advanced to carry on the road work. The bank also knew of the terms of the contract authorizing the State Road Department to withhold any part of the money to be paid under the contract in the event the contractor failed to promptly make payments to all persons supplying materials and labor. The Road Department being at all times furnished with estimates by the engineer in charge of the amount of work done and the value of it and payments were made. on such estimates. By this practice, it was averred, the bank collected its secured and unsecured debts against the contractor while holding open the assigned claims for material and labor which it seeks by this proceeding to collect from the Surety Company.

If the averments of fact set out in the plea are true they present a situation which might be termed on the bank's part shrewd business, according to some standards, but with little or none of the elements of frankness and fairness.

By that procedure the bank kept the State agency uninformed as to payments required to be made for material and labor used on the public work, which is the spirit and sole purpose of the statute under which this action is brought. It prevented the State agency from exercising its discretion under the terms of the contract of withholding money upon the report of engineers in charge to pay material men and laborers. It made it impossible for the material men and laborers themselves truthfully to make affidavits that their claims for material and labor had not been paid. It deprived the surety of the means at its hand afforded by the contract of informing itself as to the facts and taking the necessary steps which diligence would suggest to protect itself and secure the prompt payment of all claims. It prevented the State agency from requiring the

contractor to make prompt payment of such claims. In all of which the surety had a material interest because it had obligated itself to the prompt payment of the claims. The bank's procedure resulted in procuring an extension of time for the payment of claims beyond what could be deemed to be a prompt payment and that by a species of deception or disingenuousness to the surety's injury and its own advantage.

As the purpose of the Act under which this action was brought was obviously the protection of material men and laborers who supply materials and labor in the construction of public works upon which they could have no lien, the State through its agencies being concerned in a proper and beneficial working of the plan to the end that the claims for material and labor should be promptly paid, and not that the Act may be distorted into an instrument for shrewd manipulation to the injury of the sureties on the bond, we are of the opinion that the pleas were a valid, legal defense in that they set up an unlawful, unauthorized, invalid, extension of the time for payment of the claims which the surety was obligated to meet promptly, and that through the practice of deception to the injury of the surety and intended benefit of the plaintiff.

We think the authorities cited in the brief of the plaintiff in error are applicable and are in support of the validity of the plea. See United States Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 Sup. Ct. Rep. 142, 48 L. Ed. 242; Chaffee v. United States Fidelity & Guaranty Co., 128 Fed. 818; United States v. American Bonding & Trust Company, 89 Fed. 921; 21 R. C. L. 987-1000; 32 Cyc. 214.

There is no question of equity involved nor the application of payments by the contractor.

The statute under which this action was brought, Chapter

6867, Laws of Florida, 1915, Section 3533, Revised General Statutes, was apparently taken from an Act of Congress of August 13, 1894 (28 Stats. at Large 278, Chap. 280 U. S. Comp. Stats. 1901, p. 2523) although the title of the latter Act was very greatly enlarged in the enactment of the Florida Act. This Court has held that the title is a part of the Act and should be so construed. See *Ex parte* Knight, 52 Fla. 144, 41 South. Rep. 786, 120 Am. St. Rep. 191. That a statute adopted from another State brings with it its judicial construction. See Duval v. Hunt, 34 Fla. 85, 15 South. Rep. 876; A. C. L. Ry. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761.

The Legislature may make the title to an Act as "restrictive as it pleases, and where one is so framed as to indicate that certain matters *naturally* connected with or germane to the subject, generally considered, are not to be treated of in the bill, is misleading as to any legislation on such matters." See State ex rel. Gonzalez v. Palmes, 23 Fla. 620, 3 South. Rep. 171; *Ex part* Knight, *supra;* Carr v. Thomas, 18 Fla. 736; State *ex rel.* Attorney General v. Green, 36 Fla. 154, 18 South. Rep. 334.

The case of United States Fidelity & Guaranty Co. v. United States for the benefit of Bartlett, 231 U. S. 237, 34 Sup. Ct. Rep. 88, 58 L. Ed. 200, decided in 1913, is authority for the proposition that the claims of laborers supplying labor in any public work may be assigned to another and the action may be brought on the bond in favor of the assignee. The Court held that under the peculiar circumstances of that case the transactions were such as to consummate the assignment to Bartlett. The title of the Federal Act was: "An Act for the Protection of Persons Furnishing Materials and Labor for the Construction of Public Works." The Florida Act has a title very much longer which this Court, in the case of McCrary Co. v. Dade

County, 80 Fla. 652, 86 South. Rep. 612, said stated the real purpose to be: to provide that "suit may be brought in the name of the obligee in said bond for the use and benefit of any person, firm or corporation who shall have furnished any labor or material in the prosecution of said work."

It may have been the purpose of the Legislature to restrict the beneficent provisions of the Act to the persons who actually supply the materials and labor. There was no necessity to use those words in the title which could have been in the words of the title to the Federal Act. The use of them therefore was for a specific purpose, and the only conceivable purpose was to prevent an unfair and *quasi* deceitful use of the Act's beneficent provisions as a debt collecting instrument in behalf of general creditors of the contractor. Whether such was the legislative purpose or not, the language in the title is persuasive of the doctrine announced by the Supreme Court of the United States in the case of United States Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 Sup. Ct. Rep. 142, 48 L. Ed. 242, decided in 1903, to which reference is above made. That case holds; that while the rule of *strictissimi juris* ought not to be extended to contracts not within the reason of the rule and that a contract of this character where the bond is underwritten by a corporation which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor should be liberally interpreted in favor of the sub-contractor, yet it should not be extended to cases of fraud or unfair dealing on the part of a sub-contractor, or to cases not otherwise within the scope of the undertaking.

If the contention of the defendants in error was sound it would follow that by just such an arrangement as may be inferred from the averments of the plea existed between

Fulghum and the bank, those two could by the simple method of a book entry shift the entire burden of paying for all materials and labor used in the construction of a public work to the surety on the bond while all payments made by the State are applied on other debts due by Fulghum to the bank. It may be true that the surety voluntarily places itself in such danger for a consideration but if such is its risk it has the right to insist that the risk be not increased by any unfair practice or system of concealment by which the fact is suppressed and both the State and the surety are kept in ignorance of the diversion of the funds.

As there was error in sustaining the demurrer to the plea the judgment should be and is hereby reversed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.