## DETROIT FIDELITY & SURETY CO. v. CENTRAL STATION EQUIPMENT CO. et al.

### No. 955.

District Court, S. D. Florida, Tampa Division.

Nov. 9, 1932.

Sutton, Tillman & Reeves, of Tampa, Fla., for complainant.

Shutts & Bowen, Oppenborn & Mincer, Morris & Myers, and Lilburn R. Railey, all of Miami, Fla., Kurtz & Roll and Allen Clements, all of Ft. Myers, Fla., F. D. McArthur, of Birmingham, Ala., H. H. Taylor, of Miami, Fla., Altman, Morrow & Cooper and McKay, Withers & Ramsey, all of Tampa, Fla., Wiseheart & Gay, of Miami, Fla., and Knight, Thompson & Turner, of Tampa, Fla., for defendants.

AKERMAN, District Judge.

Complainant, Detroit Fidelity & Surety Company, a corporation, a surety company, filed its bill against the Central Station Equipment Company, the contractor, and others, in which it set out that it became a surety on a bond of the Central Station Equipment Company payable to the state of Florida, said bond securing a faithful performance of a contract for the erection of a bridge at Ft. Myers, Fla., and containing the usual provisions of a contractor's bond on a public contract under the statutes of the state of Florida; the object of the suit being to require the application of all remaining unpaid sums due the contractor to the payments of amounts due materialmen and laborers, etc., and fix the amount of liability as surety on such bond to such materialmen and laborers and upon the payment of such amounts to secure an exoneration of said bond.

Numerous materialmen, laborers, and others asserting claims against the contractor arising out of said contract were made parties either in the original bill or were brought in by amendment. The case was referred to a master to take testimony and report findings of fact and conclusions of law, and by

settlements and compromises a large number of the defendants were eliminated; the case finally going to trial before the master as to the validity of four claimants, to wit, the Third National Bank of Miami, F. P. Lyons Iron Works, C. E. Hillyer, and A. E. Hutchinson. The master found in favor of the claim of the Third National Bank of Miami and F. P. Lyons Iron Works and against the claims of C. E. Hillyer and A. E. Hutchinson. The complainant has filed exceptions to the master's report wherein he finds in favor of the Third National Bank and the F. P. Lyons Iron Works. C. E. Hillyer filed no exception. A. E. Hutchinson filed exceptions, but his counsel did not press the same at the argument here. Therefore the finding of the master in regard to the claims of C. E. Hillyer and A. E. Hutchinson is approved.

*F. P. Lyons Iron Works.*—The only contention presented here in behalf of complainant is that the testimony did not show that the material furnished by the F. P. Lyons Iron Works entered into the construction of the bridge. While the testimony is rather meager, the court is of the opinion that a fair inference from all the testimony sustains the contention that this material did enter into the bridge. Therefore the finding of the master as to this claim is approved.

*Third National Bank of Miami.*—This claim presents a rather difficult question, and I have carefully reviewed all the testimony presented before the master as well as the authorities presented by the counsel of both sides. It appears from the testimony that, beginning about December 11, 1929, and continuing until the completion of the contract, the Third National Bank weekly advanced to the contractor a sum sufficient to meet the weekly pay roll for labor, and that an employee of the contractor would pay off the laborer, taking from each laborer a slip purporting to assign that week's claim for wages to the Third National Bank, and that said purported assignments were permitted to accumulate until the aggregate sum of $48,873 was reached. It appears from the documentary evidence that the contractor executed its promissory notes from time to time to the bank for the sums due the bank by the contractor, and that on the liability ledger of the bank its security listed for these notes was the assignment of funds due from the state road department and no mention is made on the books of the bank of the laborers' assignments as security for the amounts due the bank by the contractor.

This presents the precise state of facts involved in the case of Fulghum v. State, 94 Fla. 274, 114 So. 367, except that in the Fulghum Case the bank received sums of money from the contract which were applied to debts due the bank by the contractor for which the surety on the bond was in no way liable, while in this case the officer of the corporation testified that every dollar advanced by the bank was used in carrying out the contract, but in all other respects the principles laid down by the Supreme Court of Florida in the Fulghum Case are applicable to this case.

I am aware that the old rule by which a surety was released by any departure from the contract as between the principal and the creditor has been relaxed in cases where the surety enters into the contract for hire, and the decisions are that in such cases there must be a liberal construction as against the surety, but, as the Supreme Court of the United States in the case of Guaranty Company v. Pressed Brick Company, 191 U. S. 416, 24 S. Ct. 142, 144, 48 L. Ed. 242 says: "Of course this rule would not extend to cases of fraud or unfair dealing on the part of the subcontractor." Therefore, it seems to me that, if the course of dealing on the part of the bank in accepting these assignments was such as to be unfair to the surety, then it could not recover against the surety, although the sums advanced by it did go into the completion of the contract.

Over a period of months the surety company was led to believe that labor claims were being paid promptly and was deprived of its right to take such steps as were afforded by the application for the bond or by law to protect itself against the accumulation of these labor claims. I have had enough experience not to be blinded to the fact that, when laborers are not paid, the work stops, and, if these laborers had not been paid, that fact would immediately have been brought to the attention of the surety, and the surety company could have taken steps to protect itself against other losses, but, by the method adopted between the bank and the contractor, the laborers were paid to all intent and purposes in so far as the laborers were concerned and the bank attempted to protect itself by the assignment of such labor claims, and thus permitted the work to go on as if the laborers had been paid.

The master recognizes this principle, but justified his finding in favor of the bank upon the theory that the surety company had notice of these assignments. I have care-

fully read and re-read the testimony, both oral and documentary, and can find no evidence in the record justifying this conclusion by the master. It is true the evidence discloses that some time in June, 1930, approximately six months after these assignments began, an agent of the company visited Miami, but the object of his visit seems to have been to secure the application of the proceeds of a check issued by the state road department to the claim of a certain materialman. On that trip he did visit the offices of the contractor and did have an interview with the president of the bank, but I can find nowhere any evidence that on this trip he was advised as to these labor assignments. The master finds that he was offered access to the books and records of the contractor and the bank, but it nowhere appears that, if he had searched the books and records of the contractor and the books of the bank, the assignment of these labor claims would have been disclosed. There is no evidence that either the books or records of the contractor contained any account of these assignments, and the liability ledger of the bank would have disclosed that the bank was relying on other security for its advances to the contractor.

I am of the opinion that this course of dealing in the bank was so unfair towards the surety on the bond as to release the surety from any liability to the bank on these assigned labor claims.

Therefore the exceptions of the complainant to the findings of the master in regard to this claim are sustained, and a decree may be entered disallowing this claim.