**WESTINGHOUSE ELECTRIC SUPPLY CO. v. DuPREE CO., et al.**

**No. 26067.**

Circuit Court, Duval County.

October 7, 1958.

Ray W. Richardson of Patterson, Freeman, Richardson & Watson, Jacksonville, for plaintiff.

Chester Bedell of Bedell & Bedell, and John P. Howard, all of Jacksonville, for defendants.

WILLIAM H. MANESS, Circuit Judge.

This matter having been heard by the court, pursuant to notice, upon the plaintiff's motion to dismiss the defenses set up in defendants' answer to the amended complaint, and the court having heard the argument of counsel and having considered the authorities submitted by counsel for the respective parties subsequent to said hearing, the court now finds that defendants' First Defense, Second Defense and Fourth Defense should be stricken, and further finds with respect to defendants' Third Defense that said defense seeks to bar recovery by a materialman (Westinghouse), who supplied materials to the subcontractor (Hime) of defendant corporation (DuPree), the main contractor, who was required by section 255.05, Florida Statutes, to furnish a penal bond, with good and sufficient sureties, conditioned that "such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor or subcontractors, in the prosecution of the work . . ."

In support of its motion to dismiss, as applied to the Third Defense in defendants' answer to the amended complaint, plaintiff asserts that the allegations of said defense seek to assert an equitable estoppel predicated principally upon the failure of Westinghouse to notify DuPree of Hime's non-payment for the materials furnished by Westinghouse on account of which this suit is brought, and that the allegations of—(1) Hime's alleged insolvency; (2) plaintiff's continued extension of credit; (3) employment by Hime of a retired Westinghouse employee; (4) Hime's assignment of the DuPree subcontract as security for a bank loan; (5) payment by Hime of other accounts with Westinghouse from the proceeds of such loan; and (6) Hime's payments to other creditors with monies realized on the DuPree job—in the absence of any allegations of fraud or concealment by the plaintiff, or other action which prevented DuPree from ascertaining the truth—are not sufficient to raise an estoppel, because there was no duty imposed by law on plaintiff to speak.

On the other hand, in support of the Third Defense, defendants contend that such defense alleges facts sufficient to bring this case within the doctrine of Fulghum v. State, 114 So. 367, in which the Supreme Court of Florida denied recovery on a public works bond by a bank because of what the court deemed "a species of deception or disingenuousness to the surety's injury and its own advantage" and "shrewd manipulation to the surety's injury and its own advantage" and "shrewd manipulation to the injury of the sureties on the bond."

After a careful study of the allegations of the Third Defense, it is the opinion of the court that the allegations do not show that DuPree was in any way prevented from ascertaining the fact of Hime's insolvency, nor do they show that the extension of credit to Hime by Westinghouse was done by any act of concealment or fraud, or that defendant was precluded by any act of Westinghouse from making inquiry as to Hime's credit or source of supplies, nor that after Hime's employment of Black there was any continued connection between Black and Westinghouse by reason whereof Westinghouse would be chargeable with such knowledge as Black had or could obtain as Hime's comptroller, nor that the "financial analysis of the operations of Hime's business" furnished monthly to Westinghouse was a detailed analysis of the DuPree job showing the collection and disbursement of funds thereon (as distinguished from Hime's entire business), nor that Westinghouse promoted or was active in bringing about the assignment by Hime to the bank of all monies to become due under Hime's subcontract with DuPree as security for a loan, nor that Westinghouse was under any duty to DuPree or had the authority to require Hime to make payments to Westinghouse out of the proceeds of such loans and assignments of which it had knowledge, or that such money as was received by Westinghouse from the proceeds of such assignment and loan was in fact money paid by DuPree directly or indirectly, nor that Westinghouse had such control over Hime's activities as to be legally chargeable with permitting and encouraging Hime to divert payments received from DuPree to other accounts.

Assuming the truth of the allegations of the Third Defense, the averments do not severally or collectively amount to that degree "of deception or disingenuousness" or "shrewd manipulation" as to come within the doctrine of Fulghum v. State, or to relieve DuPree or its surety of the obligation to "promptly make payments . . .," required by statute, nor do they give rise to a duty on the part of Westinghouse, under all the circumstances, to notify DuPree of Hime's failure to pay plaintiff.

In Fulghum v. State the conduct denounced by the Supreme Court was that of a *general creditor* (bank) and not a materialman and the acts denounced showed a scheme all controlled and directed by such bank. In the instant case, the sum total of all the allegations of the Third Defense do not show that Westinghouse had any greater knowledge of Hime's activities than DuPree or its surety could have obtained in the exercise of reasonable diligence on their part, either before or after the execution of the subcontract, or during the progress of the work itself.

110

It is therefore ordered and adjudged that defendants' First, Second, Third and Fourth Defenses be, and the same are hereby, stricken, and defendants shall have ten days within which to amend or file any further defenses they may wish to assert.