ALLEN, Chief Judge.
The appellant was the plaintiff in the lower court and the appellees were the defendants in a lien foreclosure that arose under the Mechanics’ Lien Law, Florida Statutes, Chapter 84.
Theodore H. Byron and wife, Katherine G. Byron, are the owners of the property and Joe R. Watson, d/b/a Watson Construction, and Willene Watson, his wife, are the contractors involved in the case. Other defendants were material suppliers and subcontractors. The appellant, Johnson Lumber & Supply Company, Inc., is a materialman.
The owners entered into a contract with the contractors to build a motel on the owners’ property for a total price of $37,-204.16. This construction was to he supervised by the architect firm of Cyril T. Tucker. John Modifer, an employee of the Tucker firm, signed the contract with the Byrons on behalf of the firm. The contract provided that the architect was to supervise the construction of the buildings and that progress payments were to he made from the owners to the general contractor only after the architect approved by issuing a certificate of payment to the contractor who in turn presented it to the owners for payment.
It is the generally accepted rule of law in mechanics’ lien cases that if a ma-terialman holds an unpaid account against the contractor for materials furnished under a certain construction contract and the owner under that contract paid a sum of money to the contractor which the contractor, in turn, pays to the materialman, it is the duty of the materialman to apply that fund, if he has knowledge of its source, to that account which will reduce the potential liability of the owner to the contractor or materialman involved. See 41 A.L.R. 1297 and supplemented in 130 A.L.R. 198. This rule is recognized in Florida. See Standard Accident Insurance Co. v. Duval Lumber Co., 99 Fla. 525, 126 So. 643; Fulghum v. State, 94 Fla. 274, 114 So. 367.
The lower court based his decision in this case on the above stated principle. The question involved is whether primarily the facts in this case justify the application of the above principle.
A note secured by a second mortgage on the property upon which the motel was to be built was executed by the owner to the contractors in partial payment of the contract price for this construction. This note and mortgage was in the face amount of $2,875.
Subsequently the note and mortgage were assigned to the appellant lumber company (materialman herein) by the contractor for a consideration of $1,500 computed as follows: the sum of $1,210.88 was paid in cash to the contractor Watson by the appellant and the remaining sum of $289.12 was, in effect, paid to the contractor by the return to him of certain worthless checks which the contractor had given to the ma-terialman in payment for materials sold to the contractor on other projects.
The lower court held that the sum of $289.12 was an improper payment of monies furnished to the contractor by the owners to a materialman who, in turn, applied the sum to another account owed by the contractor to him instead of the account which contractor owed to the ma-terialman on the owners’ account. We are of the opinion that the lower court was correct in so applying this sum of money.
The lower court also deducted the sum of $1,375 which represented the appellant’s *580 discount on the note. We hold that in so doing the lower court committed error for which we shall have to reverse this case.
We have found several cases in various jurisdictions where a lienholder had been given a note and mortgage instead of cash. The authorities are in disagreement as to whether or not the lien claimant waives or forfeits his right to a lien merely by taking a promissory note of the owner or the contractor for what is due him. 57 C.J.S. Mechanics’ Liens § 226, at page 799, states the rule as follows:
“Showing as to taking in payment. In some jurisdictions the taking of a note is prima facie a payment of the account, and, in the absence of an agreement to the contrary, it operates as a payment within the meaning of the rule that the lien is waived or lost by talcing a note in payment of the debt. In other jurisdictions, however, it is not to be presumed that a note taken by a person entitled to a lien was taken as payment; but it must be shown that such was the case. Even in those jurisdictions, where the doctrine prevails that the acceptance of a negotiable promissory note is presumed, in the absence of any testimony or circumstances to the contrary, to be a payment of the indebtedness for which it was given, this presumption is overcome by the fact that the acceptance of a note in payment would deprive the creditor taking the note of the substantial benefit of some security. The fact that the lienor on receiving a promissory note gave a receipt for the amount or credited the amount on his books does not conclusively establish that the note was taken in payment so as to defeat the lien, but is only a circumstance bearing on the question of whether or not it was so taken, and such question is one of fact.”
It is the law in Florida that a material-man does not waive or forfeit his right to a lien by taking a promissory note of a contractor unless the parties agreed that the note should have the effect of extinguishing the lien, or such was their intention. See Stringfellow v. Coons, 1909, 57 Fla. 158, 49 So. 1019; U. G. Stanton Co. v. L. Smith Steel Co., 95 Fla. 958, 117 So. 379. As a matter of fact, the Florida Mechanics’ Lien Law, Section 84.26, provides :
“The acceptance by the lienor of an unsecured note for all or any part of the amount of his demand shall not constitute a waiver of his lien therefor, unless expressly so agreed in writing, nor shall it in any way affect the period for filing the claim of lien under § 84.16 hereof. Any person other than a laborer may, as part of his contract, waive in writing his lien under this chapter, but a laborer may not waive his lien.”
We have not been able to find' a case in this State or in any other State on point under the facts of this case, nor was a case on point supplied by any of the counsel in the case.
The case of Farr v. Weaver, 84 W.Va. 182, 99 S.E. 395, was included in the brief of the appellees as being on point, a conclusion, however, with which we disagree. The facts in Farr v. Weaver, supra, are that the owner executed a note to’ the contractor for $1,200 to pay for material that had been furnished; that this note was taken to Farr, materialman, and instead of crediting the note on the account which Farr had for materials furnished for the owner's houses, he credited it on an older account which the construction company owed him.
The Farr case, supra, does, however, refute another point of law made by the appellant in this case which is that while, as between a debtor owing several debts to the same party and his creditor, the former paying a sum of money has a right *581 to designate to which of said debts the same shall be applied, or upon his failure to do so the creditor may make such application as he sees fit; yet there is an exception to this rule where the money was received by the debtor from a third party whose property is subject to a lien in favor of such creditor, which it was the purpose of such third party to have discharged by the payment of such money, and such creditor has knowledge of the source of such fund and the purpose for which it was turned over to the debtor, the creditor is under a duty to apply the payment to the debt of the third party.
We observe from the record in the instant case that the note, secured by a second mortgage that was assigned, is in the face amount of $2,875 to- be repaid in equal quarterly payments of $179.69 plus 6% interest per annum until paid in full. This note, which will require several years before it matures, was, executed by the homeowner, Byron, to the contractor, Watson, as part payment on the construction contract. Thus, at the time this note was executed, it was secured by a second mortgage on a partially constructed motel. As evidenced by the receipt given by Watson to the Byrons for this note, the purpose was:
“These monies shall be used to satisfy my indebtedness to subcontractors and suppliers.”
It is obvious that before the purpose of the execution of this note could be accomplished, the note had to be sold, discounted, or in some manner converted into cash by Watson. The record shows that Watson was not able to proceed on the construction job. Had Watson been financially able to finance payment of his subcontractors and materialmen, it is doubtful that this assignment would have been executed. In fact, the testimony discloses that at this time Watson was delinquent on other construction accounts and unable to meet his current payroll, much less pay current obligations on the Byron job. Since these conditions were known to the Byrons and in view of the wording of the receipt, supra, both parties must have intended that this note be converted into ready cash. Had the note and second mortgage securing the same been purchased by any banking institution or other party not connected with the construction job in question, it is clear that the purchaser would have a right to discount the said note. Such conditions would be foreign to the generally accepted knowledge that it is necessary to discount second mortgages and other inferior liens to dispose of such documents. This question naturally arises: Was there anything in the action of the materialman in discounting this note that would estop him from claiming the full amount of his lien on the property?
Elliot Paul, vice-president of Johnson Lumber, testified that the purchase of the note and mortgage from Watson was a separate transaction and had nothing whatsoever to do with the amount owed Johnson Lumber by Watson. There is no contradicting testimony in the record on this point. The contractor, Watson, did not testify during the trial of the case. Watson, however, answered certain interrogatories propounded by the appellant herein. He stated that the amount due Johnson Lumber as of September 6, 1957, was $2,601.64. This amount represents total materials furnished less credits for payments on the Byron job, according to the testimony of Elliot Paul. When asked if the above credits to Watson included a proper credit to Byron through Watson for this assignment, Elliot Paul replied:
“There would be no credit for that, that’s a separate transaction; it had nothing to do with the material furnished on the Byron j ob.”
It is evident that the assignor Watson and assignee Johnson Lumber intended the payment for the assignment to be based *582 entirely on the cash given and the return of worthless check consideration separate and apart from the delinquent accounts owed Johnson Lumber by Watson.
It has been held that one who purchases a mechanics’ lien at a discount is entitled to enforce it for its full face value as against other lien holders toward whom he stands in no fiduciary relation. Title Guarantee & Trust Co. v. Wrenn, 35 Or. 62, 56 P. 271, cited in 36 Am.Jur., Mech. Liens, § 197.
Discounting of commercial paper today is the very foundation of vast financial and industrial expansion. The amount of discount demanded on a particular obligation is, more or less, according to the credit and reputation of the person who executed the obligation and any endorser or endorsers thereon in addition to the risk involved in the case. The excessiveness of the discount could he considered as some evidence on an issue of fraud or duress. However, there is no assertion of fraud, duress, or improper dealings in the briefs or argument of counsel in this cause. It is the general rule that courts will not inquire. into the adequacy of the consideration in this type transaction between competent parties. Restatement Contracts, Sec. 81.
It is our opinion, after duly considering the apparent intent of the parties in ' this suit, the circumstances of the assignment and the foregoing legally related principles, that the chancellor erred in considering the discount portion of the assignment as a payment on the amount claimed by Johnson Lumber due from Watson on the Byron construction project.
Case reversed for proceedings not inconsistent with this opinion.
Affirmed in part and reversed in part.
KANNER, J., and STEPHENSON, GUNTER, Associate Judge, concur.