**TLZ PROPERTIES, et al., Plaintiffs,**

v.

**KILBURN–YOUNG ASSET MANAGE-
MENT CORP. and the Cadle
Company, Defendants.**

No. 95–357–CIV–ORL–22.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 30, 1996.

Richard H. Adams, Jr., Adams & Spears, P.A., Orlando, FL, for TLZ Properties, John H. Teague, John C. Lion, Richard T. Zukoski.

Gloria O. North, North & Stein, P.A., Boca Raton, FL, E. Givens Goodspeed, Law Office of E. Givens Goodspeed, Orlando, FL, for Kilburn–Young Asset Management Corp.

Keith A. Graham, Marchena and Graham, P.A., Orlando, FL, for The Cadle Co.

### MEMORANDUM DECISION AND ORDER

CONWAY, District Judge.

This cause comes before the Court on Defendant The Cadle Company's Dispositive Motion for Summary Judgment Against Plaintiffs on Plaintiffs' Amended Complaint and [Motion for] Final Judgment on Counts II and III of the Cadle Company's Counterclaims (Doc. 52); and TLZ's opposition to the Motion. The Court also disposes of other pending motions.

## I. Background Facts

On April 11, 1985, TLZ Properties ("TLZ")[1] borrowed $2.5 million from Freedom Savings and Loan Association to improve the subject commercial property. The mortgage agreement included personal guarantees on the loan by partners of TLZ.[2]

The Resolution Trust Company ("RTC") was subsequently appointed as receiver for the assets of Freedom Savings and Loan, and the TLZ mortgage was transferred to RTC. The RTC modified and extended the loan on February 28, 1991. Doc. 62 at 100988–90. As of July 1, 1991, Defendant Kilburn–Young Asset Management Corporation ("Kilburn–Young") began managing the TLZ mortgage agreement on behalf of the RTC. Doc. 62 at 100324.

TLZ subsequently defaulted on the mortgage agreement. TLZ alleges that on June 30, 1993 it entered into a verbal agreement with Kilburn–Young, whereby TLZ would perform certain tasks, and in exchange Kilburn–Young would accept the deed of the subject property in lieu of foreclosing on the mortgage, and also release the borrowers from all liabilities on the underlying mortgage. TLZ claims that it performed its obligations under this alleged agreement, that it then tendered a deed to Kilburn–Young, but that Kilburn–Young did not accept the deed in lieu of foreclosure.

Approximately one year later, RTC sold the TLZ mortgage agreement to Defendant The Cadle Company ("Cadle"). TLZ allegedly tendered a deed in lieu of foreclosure to Cadle, which also refused to accept such tender. The Plaintiffs are suing Kilburn–Young and Cadle for breaching the alleged verbal agreement by not accepting a deed in lieu of foreclosure and releasing the borrow-

---

1. TLZ Partnership was formerly known as RJB Partnership.

2. The Court will collectively refer to the Plaintiffs TLZ Properties f/k/a RJB Properties; John H.

Teague individually; John C. Lion, individually; and Richard T. Zukoski, individually; as "TLZ" solely to describe the positions collectively asserted by Plaintiffs.

ers from all liabilities on the underlying mortgage. TLZ seeks specific performance based on the alleged verbal deed in lieu of foreclosure agreement, specifically for Cadle to accept a conveyance of real property and to release TLZ and its principals from their liability on the note and guarantees held by Cadle. Cadle has asserted three counterclaims against TLZ, including one to foreclose the mortgage; the second against TLZ on the Note; and the third against TLZ's principals individually on the Guarantee. TLZ's asserts several affirmative defenses including estoppel, waiver and unclean hands.

## II. Cadle's Motion for Summary Judgment

Cadle seeks summary judgment on TLZ's Amended Complaint and final judgment on Counts II and III of Cadle's Counterclaims. Cadle contends that, based on the depositions of the principals and counsel of TLZ, there is no genuine issue of material fact as to TLZ's claim for specific performance or Cadle's counterclaims for enforcement of the Note and Guarantee. Cadle argues that no deed in lieu of foreclosure agreement ever existed; that there is no dispute as to the amounts owed on the unpaid note and guarantee; and that TLZ's principals admit to executing and defaulting on the note and guarantee. TLZ argues that summary judgment is unwarranted both because the summary judgment motion is premature, under Federal Rule of Civil Procedure 56(f) and because factual issues remain as to whether an agreement for deed in lieu of foreclosure existed.

### a. Summary judgment standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'"

*Cohen v. United American Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996) (quoting *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir.1994)). There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor. *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

### b. Analysis of the alleged agreement

In this case, Cadle seeks summary judgment on TLZ's allegation that a verbal agreement existed for deed in lieu of foreclosure and seeks final judgment on its counterclaims to enforce the Note and Guarantee. TLZ's Amended Answer to the Counterclaims admits execution of the note, mortgage, guarantee, and related loan documents. Doc. 46, ¶¶ 9, 13, 14, 23. Teague admits in his deposition that there is no dispute the loan was in default and the last payment TLZ made on the loan was on December 31, 1991. Doc. 56 at 27–28, Ex. 1. TLZ does not dispute that it was in default in its opposition to the summary judgment motion.

TLZ alleges that it reached a verbal agreement on June 30, 1996 for Kilburn–Young to accept a deed in lieu of foreclosure. The correspondence identified by TLZ that led up to the verbal agreement consists of an August 21, 1992 letter from TLZ's counsel and a February 24, 1993 letter from Kilburn Young's Senior Asset Manager.

In the letter of August 21, 1992, TLZ's counsel "invite[d] discussion of deed back to RTC in satisfaction of all obligations." Doc. 62 at 100055. In its response dated February 24, 1993, Kilburn–Young informed TLZ that

In order for Kilburn Young to consider recommending to the RTC that they accept a Deed in Lieu of Foreclosure, we will need the following items from the Borrowers and/or Guarantors.... In addition, we will need to complete an Environmental

Audit of the property.... This will need to be completed before we can recommend to the RTC that they accept a Deed in Lieu.... I await receiving the above four items and the Environmental Audit in order to consider your proposal for the Deed in Lieu.

Doc. 62 at 100483, February 24, 1993 Letter to Guy T. Rizzo from Sue A. McCallum.

The letter of June 30, 1993, from Kilburn–Young's attorney, Givens Goodspeed, Esq., confirmed a conversation that transpired between Mr. Goodspeed and TLZ's counsel Guy Rizzo:

It is my understanding that your clients would like to make a proposal to RTC by which RTC would accept a "Deed in Lieu," and waive any potential deficiency. We discussed by telephone a number of issues which would arise if your clients want to submit such a proposal.

Doc. 62 at 100007, June 30, 1993 Letter to Guy T. Rizzo from E. Givens Goodspeed. Mr. Goodspeed further explained that

First, any such proposal must be submitted in writing to Marla R. Falls, Asset Specialist, Kilburn Young Asset Management Corp.... RTC will require a current financial statement from the Borrower [and its principals].

To consider a Deed in Lieu, RTC needs to be satisfied that there are no liens on the property, other than the mortgage now held by RTC. In addition, we must come to some agreement whereby the rents currently being received by your clients are placed into escrow. You should submit a current rent roll, with copies of any leases in effect, as well as a list of the current rents being received. You asked about payment for the expenses of upkeep and maintenance of the properties. You should submit approximately 6 months of operating reports so that these expenses can be ascertained.

You are aware that there are potential environmental problems with the property. A Phase II Environmental Study is necessary to ascertain the extent of these problems. To consider acceptance of a Deed in Lieu, RTC would require that your clients pay the expenses of obtaining a Phase II

Environmental Study, which is estimated to cost from $10,000.00 to $15,000.00. If your clients did pay the expenses of that report, they would be entitled to a copy of the study. Furthermore, the current projection of costs for remediation of the property is between $35,000.00 and $55,000.00. The Phase II Study will confirm the expected costs. RTC would require that your clients pay the costs for remediation of the property....

If your clients are interested in making such a proposal, the sooner the better. Please call should you have any questions.

*Id.* at 100007.

By letter dated July 13, 1993, TLZ's counsel responded by submitting TLZ's "proposal," which included TLZ's version of the "deed in lieu" agreement TLZ sought. In the July 13 letter, Mr. Rizzo stated, "Please contact me upon your review of this so that we may finalize said matter." Doc. 62 at 100000, July 13, 1993 Letter to Marla R. Falls from Guy T. Rizzo.

RTC's counsel, Mr. Goodspeed, replied on July 27, 1993 that he had reviewed TLZ proposed agreement and that the "proposed agreement [did] meet the spirit of what I told you would be necessary in my letter to you dated June 30, 1993. However, RTC feels that it would be premature at this point to actually enter into an agreement." Doc. 62 at 100004, July 27, 1993 to Guy Rizzo from E. Givens Goodspeed. In the July 27 letter, Mr. Goodspeed also said that the RTC thought the time to enter into the written agreement would be when the environmental study was completed and the cost of remediation was determined. *Id.* On October 15, 1993, Mr. Goodspeed notified TLZ's counsel that, "after further reflection," RTC had decided not to accept the "deed in lieu" proposal from TLZ. Doc. 62 at 100005, October 15, 1993 Letter to Guy Rizzo from E. Givens Goodspeed.

TLZ contends that, based on the June 29, 1993 verbal "agreement" and the assurances in Kilburn–Young's correspondence, "TLZ continued to perform under the agreement." In support of TLZ's allegation that a verbal agreement had been reached, TLZ points to

the deposition testimony of TLZ's counsel, Guy Rizzo, who was negotiating with Givens Goodspeed, Kilburn–Young's counsel, about the feasibility of the "deed in lieu" arrangement. Mr. Rizzo testified as follows:

Q. Did there come a point in time in your representation of TLZ ... where it was your understanding that an agreement had been created between TLZ Properties, including the general partners, and someone at the Resolution Trust Corporation whereby RTC had agreed to accept a deed in lieu of foreclosure, along with certain other conditions and resolutions of the related indebted documents?

A. Yes.

Q. When did that happen?

A. I basically felt that that occurred when Givens Goodspeed contacted me and told me to go ahead and draft the letter of the agreement that set forth certain things that he wanted into the agreement, and then I forwarded the agreement to him and he reviewed it and gave it to his people at Kilburn–Young, and then advised me that we had met with the spirit and intent of everything that he wanted to, but they just didn't want to enter into an agreement at that time, enter a written agreement, but we could proceed under the intent of what I had sent to him.

Doc. 54 at 7–8. Rizzo also testified that

Somewhere along the line, yes, I feel there was a verbal agreement for deed in the lieu.... When I drafted the agreement for Givens Goodspeed, I felt that we had an agreement that we covered all the major points that they wanted to effect the deed in the lieu. Then Givens sends me this letter of July 27, [1993,] because of the fact that they—from what I understood after I received it, they didn't enter into this agreement with environmental issues still outstanding on the property and at stake....

So somewhere along the line without the written agreement, I felt that they had agreed to take the deed in the lieu of foreclosure, and I felt that everything along the line that I had been dealing with

them for a year was to work out and effect that transaction.

Doc. 54 at 14–15.

Cadle contends that TLZ is not entitled to specific performance against Cadle because, among other reasons, there was no "deed in lieu of foreclosure" agreement; and the proposal did not satisfy Florida's Statute of Frauds, Fla.Stat. § 725.01 and is therefore unenforceable.

### (1) No "deed in lieu of foreclosure" agreement existed

■ TLZ alleges that a verbal "deed in lieu of foreclosure" agreement existed based on the June 30 letter from Kilburn–Young's counsel to TLZ's counsel. Cadle contends that no such agreement was ever reached because basic contract law requires an offer and acceptance, and in this case, TLZ's proposed agreement was merely an offer which RTC never accepted.

■ Under Florida law an "agreement" is defined as a manifestation of mutual assent by two or more legally competent parties to each other. 11 Fla.Jur.2d *Contracts* § 1 (1979). "It is essential to the creation of a contract that there be a mutual or reciprocal assent to a certain and definite proposition." *Id.* at § 10. The parties must have a "definite and distinct understanding, common to both, and without doubt or difference" or there is no contract. *Id.* Florida courts have distinguished the contract itself from the preliminary negotiations leading up to the execution of the contract; as long as any essential matters are left open for further consideration, the contract is not complete. *See, e.g., Central Properties, Inc. v. Robbinson,* 450 So.2d 277, 280 (Fla. 1st DCA 1984), *quashed in part on other grounds,* 468 So.2d 986 (Fla.1985) (where parties continue to negotiate on essential terms there is not a meeting of the minds); *see also* 11 Fla.Jur.2d *Contracts* § 11 (1979 & Supp.1996).

The crux of the issue is whether the June 29, 1993 telephone conversation was an oral agreement for deed in lieu of foreclosure to which there was mutual assent, or whether that conversation was a preliminary negotiation about the feasibility of a deed in lieu

agreement, which left open many essential terms. The Court finds that there is no evidence of the parties' mutual assent to such an agreement beyond TLZ counsel's bald assertion that such a binding oral agreement existed.

First, TLZ cites no evidence that its offer was ever accepted by RTC.[3] The singular piece of evidence TLZ points to is the deposition testimony of its counsel, Guy Rizzo that

> Somewhere along the line, yes, I feel there was a verbal agreement for deed in the lieu.... *When I drafted the agreement* for Givens Goodspeed, I felt that we had an agreement that we covered all the major points that they wanted to effect the deed in the lieu.

Doc. 54 at 14–15 (emphasis added). Mr. Rizzo's description of what transpired clearly describes his drafting of TLZ's offer which was subject to acceptance or rejection by the RTC. TLZ's admitted "drafting" of an offer, which it refers to as an "agreement," is evidence that it did not believe the negotiation discussions, or "verbal agreement," to be binding.

Second, there is no evidence that RTC and its agent, Kilburn–Young, viewed TLZ's questions about the feasibility of a "deed in lieu" as anything other than proposals, which were repeatedly rejected as the negotiations progressed. Kilburn–Young's June 30, 1993 letter, which TLZ alleges supports the purported oral agreement, does just the opposite because it refers to a *proposal*, not a final agreement:

> It is my understanding that [TLZ] would like to make a *proposal* to RTC.... We discussed by telephone a number of issues which would arise if [TLZ] wants to submit such a *proposal*.... [A]ny such proposal must be submitted in writing.... To consider *acceptance* of a Deed in Lieu, RTC

would require that [TLZ] pay the expenses of obtaining [an] Environmental Study....

Doc. 62 at 100007 (emphasis added). Further, on July 27, 1993, Kilburn–Young refused to accept TLZ's offer by stating, "RTC feels that it would be premature at this point to actually enter into an agreement." Doc. 62 at 100004. On October 15, 1993, Kilburn–Young notified TLZ that the RTC had unequivocally rejected TLZ's offer. Doc. 62 at 100005.

Third and most significantly, TLZ's own correspondence confirms that TLZ viewed its proposed agreement as an offer that was subject to further negotiation:

> Enclosed herewith is my client's *proposal* in connection with said property.... Please contact me upon your review of this so that we may *finalize* said matter.

Doc. 62 at 100000, Letter of July 13, 1993 (emphasis added). The relevant portion of the proposed agreement, as drafted by TLZ, stated that RTC and TLZ were "desirous of entering into an Agreement to effect the transfer of property for deed in lieu of foreclosure." TLZ's own documents clearly indicate that it was seeking the RTC's acceptance and that TLZ did not believe a meeting of the minds had been reached.

TLZ's opposition to Cadle's summary judgment motion consists of the brief response that

> The testimony and documents show that there was an agreement for deed in lieu of foreclosure between TLZ and Kilburn–Young.... There is no evidence in the record that there was not an agreement other than two sentences in the affidavit of Goodspeed....

Doc. 61 at 12. TLZ generically directs the Court to a previous section of the opposition

---

**3.** TLZ seeks more time, under Federal Rule of Civil Procedure 56(f), arguing that it has not had a sufficient opportunity to conduct discovery. Under the Rule, TLZ must state why it cannot "for reasons stated present by affidavit facts essential to justify its opposition" Fed.R.Civ.P. 56(f). "[T]he mere averment that the crucial information is within the exclusive knowledge of the opponent without stating that further discovery is desired and will be productive has been held insufficient to prevent the entry of summary

judgment." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2741, at 548 (1983). TLZ fails to explain what essential facts the deposition of Goodspeed would evidence as to the making of the contract that his correspondence does not. Since the filing of its response, TLZ deposed Goodspeed on March 20, 1996 (Doc. 87, Ex. A) and has had sufficient opportunity to supplement its response with any such essential facts.

memorandum (Section II.A.) which sets forth TLZ's version of the "facts," however, this section is devoid of any particularized analysis of "evidence sufficient for a jury to return a verdict in its favor" and merely summarizes the negotiations between the parties.

TLZ also argues that the oral agreement "is evidenced by several memoranda signed by Kilburn–Young's agent, Goodspeed. These documents include his letter dated June 30, 1993, which contains all of the terms of the agreement, and his letter of July 27, 1993." Doc. 61 at 13. The Court has fully considered the two letters to which TLZ refers and has failed to locate a scintilla of evidence that an executed oral agreement existed.

Furthermore, the Court is not expected to comb the entirety of the evidence submitted, looking for genuine issues of material fact. Once the moving party has met its burden of identifying the portions of the record demonstrating the absence of a genuine issue of fact, the production burden shifts to the opposing party to do more than generically allege that documents or vague, self-serving deposition testimony "evidence" the agreement at issue. Rather, the non-moving party must establish, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor. *Cohen v. United American Bank of Central Florida,* 83 F.3d 1347, 1349 (11th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)).

TLZ has failed to produce any evidence that anything more than an offer or proposal was discussed during the June 29, 1993 phone call. The deposition testimony of Guy Rizzo, TLZ's counsel, that he "basically felt" that an oral agreement had been created when he was told to "draft the letter of the agreement," is overwhelmingly contradicted by the written documents of Kilburn–Young *and* TLZ. It is clear from the written correspondence that the June 29, 1993 conversation between Mr. Rizzo and Mr. Goodspeed was merely a discussion of the feasibility of TLZ's proposal for a deed in lieu of forfeiture agreement. There being no genuine issue of material fact as to the existence of the agreement, summary judgment on the issue of specific performance is warranted.

### (2) Florida's Statute of Frauds

■ Assuming *arguendo* that a contract did exist, Cadle's second basis for summary judgment is that Florida's Statute of Frauds, Fla.Stat. § 725.01, bars TLZ's specific performance action. Cadle contends that specific performance of a transfer of real estate cannot be awarded unless there is a signed, written contract and in this case, the agreement for the deed in lieu was not "in writing" and "signed by the party to be charged," as required by Florida's statute of frauds.[4] *See Fox, v. Sails at Laguna Club Dev. Corp.,* 403 So.2d 456, 458 (Fla. 3d DCA 1981). TLZ does not contest that the proposed "deed in lieu of foreclosure" agreement falls within the statute of frauds. Instead, TLZ argues that the statute of frauds does not apply to the alleged contract at issue because TLZ fully performed.

■ Under Florida law, the statute of frauds applies only to executory and not to executed contracts. *Miami Beach First National Bank v. Shalleck,* 182 So.2d 649, 651 (Fla. 3d DCA 1966) ("The Supreme Court of Florida has long held that the statute [of frauds] applies only to executory and not to executed contracts."). The statute of frauds may not be utilized as a defense to a verbal contract that has been fully performed on the part of the person claiming the benefit thereof. *Shaffer v. Ricci,* 603 So.2d 566, 568 (Fla. 4th DCA 1992). "When an oral contract has been fully performed by one party, the statute of frauds may not be employed as a defense, even though the subject matter of the contract is the conveyance of an interest in land." *W.B.D., Inc. v. Howard Johnson Co.,* 382 So.2d 1323, 1327 (Fla. 4th DCA 1980), *rev. denied,* 388 So.2d 1114 (1980); *see*

---

**4.** No action shall be brought ... to charge any person ... upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized. Fla.Stat.Ann. § 725.01 (West 1988).

*also J.F. Hoff Electric Co. v. Goldstein*, 560 So.2d 419, 421 (Fla. 4th DCA 1990). However, if not fully performed, the contract falls within the statute of frauds, and if no written agreement was reached, the oral contract is unenforceable. 27 Fla.Jur.2d *Specific Performance* § 2 (1981); *Fletcher v. Williams*, 153 So.2d 759, 761 (Fla. 1st DCA) (statute of frauds is a limitation on the judicial authority to enforce).

TLZ contends that it fully performed its obligations under the oral agreement, up to the point at which Kilburn–Young's action prohibited TLZ from further performing. Doc. 61 at 13. Cadle argues that TLZ has not fully performed because TLZ paid for only one half the cost of the RTC's environmental study and TLZ delayed paying for the environmental clean-up work until January 5, 1995. Doc. 52 at 11.

The Court finds that, assuming *arguendo* that TLZ had reached agreement with the RTC for a deed in lieu of foreclosure, the contract was *executory* [5] and therefore could not be fully performed so as to exclude it from the statute of frauds. As TLZ admits in its opposition memorandum, the provision of a *written* agreement to the RTC was one of the "requirements" of the alleged oral agreement. Doc. 61 at 3. However, as demonstrated by TLZ's very own draft of the written agreement, the signatures of RTC officials were required for the written agreement to be effective. Doc. 62 at 100002. TLZ apparently contends that mere submission of a draft of the agreement alone would operate to bind the RTC to the deed in lieu of foreclosure agreement. The Court finds that TLZ's submission of the draft of the written agreement to the RTC was insufficient to amount to TLZ's "full performance" of the conditions of the alleged oral agreement.

Cadle also contends that TLZ did not fully perform since TLZ only paid for one-half of the environmental study, even though Kilburn–Young had instructed TLZ it would have to pay for the full cost of the study. Doc. 62 at 100007. ("To consider acceptance of a Deed in Lieu, RTC would require that your clients [TLZ] pay the expenses of obtaining a Phase II Environmental Study"). In fact, TLZ paid for one-half of the environmental study on November 22, 1993 (Doc. 62 at 100009), well after Kilburn–Young sent its October 15, 1993 letter stating that RTC had decided not to accept the deed in lieu proposal. Doc. 62 at 100005.

In addition to the statute of fraud's proscription against oral agreements for the transfer of real property, the language of the "Continuing Agreement of Guarantee and Indemnity" required any modification to be in writing. Doc. 62 at 100880, ¶ 14. Cadle contends, and TLZ does not dispute, that TLZ's principals could not be released from their existing Guarantee unless the release was in writing and signed by the guarantors and the lender. TLZ's deed in lieu proposal specifically required that the RTC agree to "release BORROWERS [TLZ's principals] from any and all guarantees and/or other obligations of any kind whatsoever." Doc. 62 at 100002, ¶ 5. TLZ's inclusion of such a provision in the draft of their proposal, to comply with the terms of their existing Guarantee with the RTC, is further evidence that an oral modification releasing the Guarantee would be unenforceable.

The Court finds that, assuming *arguendo* an oral agreement existed, it fell within the statute of frauds. Where a contract is unenforceable under the statute of frauds, the remedy of specific performance is precluded. *Wolfson v. Moye*, 214 So.2d 629, 631 (Fla. 3d DCA 1968). The Court having determined that summary judgment is warranted on the issue of specific performance because no agreement existed and, alternatively, because the alleged contract is unenforceable, the Court need not consider Cadle's other arguments for summary judgment.

**(c) Summary judgment as to Kilburn–Young**

While Defendant Kilburn–Young Asset Management Corp. has not sought sum-

---

**5.** An executory contract is one which is contingent upon the occurrence of some event or the performance of some act in the future and is the opposite of an executed contract. *See Black's Law Dictionary* (West 1990).

mary judgment on the breach of contract claim, it appears to the Court from the undisputed facts that Kilburn–Young may be entitled to summary judgment on Count I of the Amended Complaint (Doc. 45). Under Florida law, summary judgment is warranted where an attempt is made to recover damages for the breach of a contract that is unenforceable under the statute of frauds. 49 Fla.Jur.2d *Summary Judgment* § 23 (1984); *Riviera Printing Co. v. Hessler's, Inc.,* 109 So.2d 778, 778 (Fla. 3d DCA 1959). So as to afford TLZ notice and an opportunity to be heard, TLZ is directed to file a memorandum of law by October 15, 1996 if TLZ wishes to file opposition. On October 16, 1996, the Court will take the matter under advisement and no hearing will be held.

### III. Final judgment on Counts II and III of the Counterclaims

■ Cadle seeks final judgment on two of its counterclaims: against TLZ on the Note and against TLZ's principals on the Continuing Agreement of Guaranty and Indemnity. Where a determination of liability in a suit depends on the written instrument of the parties and the legal effect to be drawn from the instrument, the question at issue is one of law only, and ordinarily is determinable on summary judgment. 49 Fla.Jur.2d *Summary Judgment* § 21 (1984). However, the Court must fully consider TLZ's affirmative defenses to determine whether a material factual issue exists. *See Campagna v. Dicus,* 606 So.2d 1278, 1278 (Fla. 2d DCA 1992). Cadle will prevail on its motion for summary judgment on the counterclaims if Cadle establishes the insufficiency of TLZ's affirmative defenses and TLZ then fails to produce sufficient evidence to support the defenses. *Id.* at 1278.

■ Cadle contends, and TLZ does not dispute, that Cadle purchased TLZ's Note, Mortgage, and the related Guarantee (along with other financial instruments) from the RTC for $2,870,984.[6] TLZ also admits it was in default on the Note.[7] The validity or ownership of the promissory Note is not in dispute, Cadle has met its initial burden to recover on the Note, and the burden of producing sufficient evidence to support its affirmative defenses rests on TLZ. *See Crum v. United States Fidelity and Guaranty Co.,* 468 So.2d 1004, 1006 (Fla. 1st DCA 1985).

TLZ asserts six affirmative defenses, four of which, Cadle contends, are founded on the refuted assertion by TLZ that an oral agreement existed. For TLZ's affirmative defenses of estoppel (¶ 2), waiver (¶ 3), and unclean hands (¶ 3), TLZ argues in virtually identical paragraphs that Cadle cannot obtain a judgment against TLZ or the guarantors because "a valid agreement existed" between TLZ and Kilburn–Young and that agreement has been breached. Doc. 46. The Court has determined, *supra,* that no valid "deed in lieu" agreement ever existed.

#### a. Estoppel

■ The party claiming estoppel on the basis of another party's actions or omissions must show that he justifiably relied on those actions to his prejudice, and that his reliance was reasonably anticipated by the other party. *State v. Hadden,* 370 So.2d 849, 852 (Fla. 3d DCA 1979). A party cannot assert an estoppel where it did not rely upon the representations or conduct of the other party, nor was misled by such conduct. 22 Fla.Jur.2d *Estoppel and Waiver,* § 54 (1980).

In this case, Cadle argues that TLZ could not have acted in good faith in changing its position in reliance on the purported agreement because TLZ was notified well before it acted that the RTC would not accept the "deed in lieu" proposal. TLZ contends that it "clearly acted in reliance on Kilburn–Young's representations" and it would not have paid for the Phase II study or the remedial cleanup but for the oral "agreement."

The Court finds as a matter of law that TLZ could not have relied on the purported

---

6. Doc. 52, Attached Affidavit of Cecil Cadle; Doc. 61, TLZ's Memo. of Law at 10 n. 1 & 18 ¶ E.

7. Doc. 46, TLZ's Amended Answer at 3 ¶ 1; Doc. 56 at 27–28, Ex. 1, Teague Depo. (last TLZ check making payment to RTC is dated December 31, 1991).

oral agreement in good faith, in November 1993 and January 1994, in the face of the RTC's unequivocal rejection of its "deed in lieu" proposal communicated in October 1993. TLZ did not pay the RTC for the BRAE Environmental Phase II Study until November 22, 1993. Doc. 62 at 100009. TLZ did not authorize the subsequent Omega Phase II Environmental Study until January 25, 1994. Doc. 62 at 101106. TLZ's actions to obtain the environmental study and/or begin the environmental clean up work were taken well after its receipt of the October 15, 1993 letter unequivocally expressing RTC's rejection of TLZ's "deed in lieu" proposal. Doc. 62 at 100686. The affirmative defense of estoppel is hereby stricken.

### b. Waiver

■■■ Cadle argues that the affirmative defense of waiver is equally without merit. The doctrine of waiver requires that the party have an intention to relinquish the right or benefit allegedly waived. 22 Fla.Jur.2d *Estoppel and Waiver*, § 89 (1980). TLZ contends that, "whether or not there was an agreement, Kilburn–Young clearly waived its rights by representing that it would accept the deed in lieu if TLZ remedied the environmental problems." TLZ's waiver argument is based upon the RTC's acceptance of the "deed in lieu" agreement. However, as the Court has already determined, the RTC unequivocally rejected TLZ's deed in lieu proposal in October 1993. TLZ fails to cite any case law in support of its argument. The Court finds that no factual issue exists as to the application of waiver and the affirmative defense is hereby stricken.

### c. Unclean hands

■■■ Cadle also contends that there is no factual issue as to TLZ's "unclean hands" defense. The "unclean hands" doctrine has been described as "beyond question that 'one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim.'" *Ocean View Towers, Inc. v. First Fidelity Sav. & Loan Assoc.,* 521 So.2d 325, 326 (4th DCA 1988) (quoting *Roberts v. Roberts,* 84 So.2d 717, 720 (Fla.1956)). The party asserting the

defense must establish its application by the evidence. 22 Fla.Jur.2d *Equity* § 53 (1980). Where the party raising the defense does not file any affidavits or other competent evidence controverting the material facts asserted by the party seeking summary judgment on the Note, summary judgment is warranted based on the lack of any dispute in the material facts. *See Gray v. Purchase Corp.,* 573 So.2d 205, 206 (Fla. 1st DCA 1991). In *Ocean View,* the appellate court upheld foreclosure and the district court's striking of the "unclean hands" defense where the asserting party relied on its own self-serving testimony and there was no documentation "whatsoever" in support of the alleged oral agreement. 521 So.2d at 326.

In this case, TLZ fails to produce any evidence whatsoever of Cadle's alleged "unclean" hands, arguing only that "Calde and Kilburn–Young waived [the unclean hands] argument when they agreed to accept the deed in lieu knowing that the loan was in default." As the Court has already determined, there is a complete lack of evidence to support the existence of the oral "agreement to accept the deed in lieu," therefore the affirmative defense of "unclean hands" is completely without merit and is hereby stricken.

### d. Failure of consideration (¶ 5)

■■■ TLZ asserts the affirmative defense that Cadle did not pay valuable or adequate consideration for the loan and is therefore not entitled to a judgment against the guarantors. Under Florida law, want of consideration means a total lack of any valid consideration for a contract; failure of consideration is the neglect, refusal, or failure of one of the parties to perform or furnish the agreed upon consideration. *Royal Typewriter Co. v. Xerographic Supplies Corp.,* 719 F.2d 1092, 1107 n. 9 (11th Cir.1983).

Cadle argues that failure of consideration is not a viable defense since, under Florida law, a debtor cannot escape liability on a note simply because the note was discounted in the course of commerce, citing *Johnson Lumber & Supply Co. v. Byron,* 113 So.2d 577 (Fla. 2d DCA 1959). Cadle argues that, for policy reasons, RTC's auction of the Note

and loan documents should be upheld because it was an arms-length transaction and TLZ's principals were provided the same opportunity to bid on the indebtedness.

TLZ does not refute Cadle's statement of the law, instead, TLZ merely states, without any support, that the assets Cadle purchased for $2,870,984 were worth $12,340,078.00 by TLZ's estimate and that it has not had an opportunity for discovery to develop evidence in support of the defense. TLZ fails to state with any particularity what discoverable evidence it seeks and thus this, in and of itself, does not present a factual issue. TLZ has admitted that Cadle paid $2,870,984 for the Note and other financial instruments. Therefore, TLZ cannot now argue that there was "a total lack of any valid consideration" for the Note, *see Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092 (11th Cir.1983), and thus the "failure of consideration" defense is due to be stricken.

### e. Decline of fair market value (¶ 4)

■ TLZ alleges that Cadle has caused the fair market value of the property to decline because Cadle receives all rents paid by the tenants and refuses to pay any costs related to the property and because Cadle is intentionally driving tenants off the property. Cadle contends that it is acting in accordance with its rights under the "Assignment of Leases, Rents and Profits," executed by TLZ as security for the Note and Mortgage. Paragraphs 4 and 5 of the agreement allow Cadle [8] to collect rents, lease the property, and take legal action relating to rent collection, in the event of a default by TLZ. Doc. 62 at 100548. It is undisputed that TLZ defaulted. TLZ's default entitled the RTC, succeeded by Cadle, to collect rents and take legal action relating to rents. TLZ, without citing any case law in support, mischaracterizes conduct flowing from its own default as an affirmative defense. The defense is hereby stricken.

**8.** RTC assigned the Note, Mortgage and related documents to Cadle on November 29, 1994. Doc. 62 at 100760–64.

### f. Holder in due course

The Court has stricken all but one of TLZ's affirmative defenses. The remaining defense is that "Cadle is not a holder in due course … Therefore, Cadle is subject to all defenses TLZ and the guarantors have against Freedom[ ], the RTC and Kilburn–Young." Doc. 46 at 3. This defense is of no consequence to the factual issues argued in the instant motion, since Cadle does not assert a defense that is predicated on the status of a holder in due course, and does not assert a defense that is not available to the RTC or Kilburn–Young.

Cadle is entitled to summary judgment on the Note and the Guarantee, Counts II and III of the Counterclaim. The supporting affidavit of indebtedness by Cecil Cadle indicates that the amount due as of the Motion's filing was $2,372,926.00 in principal, interest of $1,106,960.09 through January 31, 1995, with interest accruing at a rate $955.76 per day thereafter.[9] Doc. 52, Attached Ex., Affidavit of Cecil Cadle.

TLZ has admitted it defaulted on the $2.5 million loan and that Cadle Company purchased the Note and Guarantee, along with other financial instruments, from the RTC for $2,870,984.00. In its opposition memorandum, TLZ does not dispute the amount of indebtedness stated in Cadle's affidavit of indebtedness. Summary judgment is appropriate where default is conceded and no genuine issue of material fact exists as to the amount owed. *Cf. Pita v. State Street Bank and Trust*, 666 So.2d 268, 268 (Fla. 3d DCA 1996) (summary judgment precluded where genuine issues of material fact existed as to whether payments were properly credited and the actual amount of money due even though defendant conceded default); *Bakst v. FDIC*, 617 So.2d 402, 403 (Fla. 3d DCA 1993) (same).

Cadle has represented to the Court that it intends to voluntarily dismiss, without prejudice, Count I (mortgage foreclosure) of its Counterclaims. *See* Doc. 52 at 2.

**9.** Interest accruing from January 31, 1995 to the date of this Order is $580,146.32; $955.76 times 607 days.

Based on the foregoing, it is ordered as follows:

1. Defendant The Cadle Company's Motion for Summary Judgment (Doc. 52) is GRANTED on TLZ's claim for specific performance, Count II of the Amended Complaint (Doc. 45).

2. It appears to the Court from the undisputed facts that Kilburn–Young may be entitled to summary judgment on Count I (breach of contract) of the Amended Complaint (Doc. 45). So as to afford TLZ notice and an opportunity to be heard, TLZ is directed to file a memorandum of law by October 15, 1996 if TLZ wishes to file opposition. On October 16, 1996, the Court will take the matter under advisement and no hearing will be held.

3. Cadle's Motion (Doc. 52) for final summary judgment on Count II (Promissory Note) and Count III (Guarantee) of the Counterclaims (Doc. 4) is GRANTED.

4. Judgment shall issue in favor of The Cadle Company against TLZ Properties f/k/a RJB Properties; John H. Teague, individually; John C. Lion, individually; and Richard T. Zukoski, individually, jointly and severally, in the amount of $4,060,032.30, for which let execution issue.

5. TLZ's Motion for Sanctions (Doc. 72) is DENIED as meritless.

6. Cadle's Motion to Extend Time to Disclose Expert Witnesses (Doc. 71) is DENIED as moot.

7. TLZ's Motion to Strike Cadle's Expert Witness Designation (Doc. 74) is DENIED as moot.

8. Cadle's Motion for Protective Order and Telephonic Deposition (Doc. 76) is DENIED as moot.

9. TLZ's Motion to Extend Discovery Deadline and depose additional parties (Doc. 79) is DENIED as moot as it relates to the depositions of the Cadle Company, Cecil Cadle, Ron L. Nation, Cadle's unnamed environmental expert. The Motion, as it relates to Kilburn–Young and RTC employees, is DENIED with leave to refile within eleven days of the Court's decision on summary judgment as to Kilburn–Young.

10. Zukoski's Motion for Protective Order (Doc. 84) is DENIED as moot.

11. Kilburn–Young's Motion to Extend Time to Serve Answers (Doc. 90) is unsigned by counsel and is hereby ordered STRICKEN.

12. Cadle's Motion to Bifurcate Trial (Doc. 93) is DENIED as moot.

13. Cadle's Motion *in limine* (Doc. 94) is DENIED as moot.

14. TLZ's Motion for Continuance (Doc. 95) is GRANTED in part. The case is removed from the November 1, 1996 trial docket. A new trial date will be assigned after October 16, 1996.

15. TLZ's Motion for Appointment of Receiver (Doc. 96) is DENIED as moot.

16. The Joint Motion for Pretrial Conference (Doc. 97) is DENIED as moot.

17. TLZ's Motion to Extend Time to File Response to Cadle's Motion *in limine* (Doc. 99) is DENIED as moot.